Max Eisenberg, on Behalf of Himself and All Other Stock-holders of Central Zone Property Corporation, Similarly Situated, Plaintiff, *v.* Central Zone Property Corporation et al Defendants.

Supreme Court, Special Term, New York County, September 30, 1952.

*Frank S. Samansky* for plaintiff.

*Bergerman & Hourwich* for defendants.

SCHWARTZ, J. These are cross motions for judgment on the pleadings. The corporate defendant (hereinafter called " New York Corporation ") is a real estate corporation whose principal asset is the Central Zone building located at 305–313 East 45th Street in New York City. The individual defendants are officers and directors of the corporation. At the time this action was brought, there were issued and outstanding 21,165 shares of the corporation's $1 par value common stock. Plaintiff since 1935 has been the owner of five shares of the stock.

In March, 1952, the stockholders of the New York Corporation were notified by mail of the calling of a special meeting of stockholders to vote upon the following four proposals:

" 1. To transfer the real estate and other assets of the New York corporation to a new corporation to be formed under the laws of the state of Delaware (hereinafter referred to as ' the Delaware Corporation ') in exchange for (a) the assumption by the Delaware Corporation of all the liabilities of the New York Corporation and (b) the issuance to the New York Corporation of all the authorized capital stock of the Delaware Corporation which shall consist of 21,165 shares of the par value of $1 per share.

" 2. To authorize the deposit by the New York Corporation of all of the said shares of stock of the Delaware Corporation, when received in a Voting Trust " in which defendants Scheuer and Shroder and one David Picket would be the voting trustees. The voting trust agreement would contain the usual provisions of such agreement and would, in addition, authorize the trustees " to sell all of the deposited stock as a unit for such consideration in money, mortgages, notes, leases, securities or otherwise, as they may deem advisable " provided that the proposed sale was consented to by certificate holders representing 66⅔% of the deposited shares of stock and that, within thirty days after written notice of the proposed sale was given to all voting trust certificate holders, written objection to the sale was not received from certificate holders representing 20% or more of the deposited stock.

" 3. To amend the certificate of incorporation of the New York Corporation to authorize the transactions set forth in this Notice of Meeting * * *.

" 4. To dissolve the New York Corporation upon the consummation of the foregoing proposals and to distribute to each stockholder of the New York Corporation in exchange for his security (stock or present Voting Trust Certificates representing stock) a Voting Trust Certificate representing the same number of shares of stock of the Delaware Corporation as are owned by such stockholder in the New York Corporation.''

An explanatory letter, signed by defendant Scheuer, president of the corporation, after noting that the term of the voting trust subscribed to by the stockholders of the corporation (including plaintiff) had recently lapsed, continued as follows:

'' The principal stockholders of your Corporation have considered the feasibility of an arrangement which would enable the stockholders as a group to realize a return on their stock. It is believed that a better price can be obtained for all the shares of stock if they could be sold and delivered as a unit. To do so at the present time would require the consent of 100% of the stockholders to such a sale and the transmittal of their stock certificates. Practical difficulties make this procedure unfeasible as, there being about 700 stockholders, there would always be a number of them who could not be communicated with in time, or who technically would not be in a position to consent, although they might approve of the proposed sale.

'' Accordingly there has been formulated the following plan which would make it possible to sell all the stock of the Corporation as a unit when a satisfactory offer is obtained * * *.

'' In order to consummate the plan, it is necessary to have the approval of at least 66⅔% of the outstanding shares of the New York Corporation.''

On the commencement of this action, plaintiff moved by order to show cause for a temporary injunction restraining defendants from holding the proposed special meeting of stockholders, from voting on the proposals set forth in the notice of meeting and from carrying any of the said proposals into effect. This motion was denied by order entered April 15, 1952.

On April 23, 1952, the special meeting of stockholders was held and the proposals set forth in the notice of meeting were adopted.

In his amended complaint, verified May 19, 1952, plaintiff, suing for himself and all other stockholders similarly situated, sets forth the text of the proposals and the fact of their adoption by the stockholders. These allegations are admitted by defendants' answer. The complaint goes on to allege, for a first

cause of action, that defendants have devised the proposals " in bad faith and in their own interests and not in the best interests of Corporation or the minority stockholders " and are endeavoring to deprive minority stockholders of all voting rights with respect to the property and policy of the corporation and of all rights with respect to future profits; and that the reasons given by defendants for formulating the plan — namely, that it will enable the shareholders to sell their stock as a unit and thus realize a better return — " are sham and designed to conceal the true purposes of the aforesaid plan." For a second cause of action, the complaint alleges that the resolutions are not within the powers granted by the corporate charter. And for its third cause of action, plaintiff alleges that the resolutions are " illegal and void " in that they compel plaintiff and similarly situated stockholders " to either ask for an appraisal of their stock in Corporation, or become holders of voting trust certificates in another corporation in place of said stock." All of these allegations — which merely set forth different legal theories based upon the same set of facts — are denied by the answer. The relief prayed by the complaint is a judgment directing defendants to vacate and nullify the resolutions passed at the special meeting, and " restraining and enjoining the defendants from putting into effect any of the aforesaid proposals ".

The cause is here on cross motions for judgment on the pleadings.

At the outset, it is important to observe that the transaction authorized by the challenged resolutions has three components: first, a sale of the corporate assets, consisting principally of the Central Zone building, to a Delaware corporation formed for that purpose, in return for all of the latter corporation's capital stock; second, the deposit of the stock thus received in a voting trust, whereunder the right to vote and the right to dispose of the stock (with the consent of a large majority of the shares in the trust) is conferred on the trustees; and, finally, dissolution of New York Corporation and distribution to its shareholders of voting trust certificates representing a number of shares in Delaware Corporation equal to their holdings in New York Corporation.

It is defendants' contention that this three-pronged scheme was authorized in its entirety by section 20 of the Stock Corporation Law. That statute empowers a corporation, with the consent of the record holders of two thirds of the outstanding shares entitled to vote thereon, to " sell and convey its property,

rights, privileges and franchises, or any interest therein or any part thereof ''. A dissenting stockholder, the section goes on to provide, shall have a right to appraisal and payment for his stock in accordance with the provisions of section 21. This right to obtain the value of his stock is, under settled principles, the exclusive remedy of the stockholder who objects to the terms of the sale or the circumstances under which the transaction was entered into, and he may not invoke the aid of the courts to invalidate the sale. (See *Beloff* v. *Consolidated Edison Co. of N. Y.,* 300 N. Y. 11; *Anderson* v. *International Minerals & Chem. Corp.,* 295 N. Y. 343; *Liebschutz* v. *Schaffer Stores Co.,* 276 App. Div. 1; *Blumner* v. *Federated Dept. Stores,* 99 N. Y. S. 2d 691, and *Blumenthal* v. *Roosevelt Hotel,* 202 Misc. 988.) This is because the purpose of section 20 is to permit a corporation to sell its business on terms deemed advantageous by the holders of the great majority of its stock, without requiring it to obtain the consent and approval of every last shareholder; the right to receive the value of their stock is deemed sufficient protection of the dissenters' interests. (See *Matter of Timmis,* 200 N. Y. 177, 181.)

While section 20 thus authorizes a corporation to sell its assets, with the consent of two thirds of its shareholders, without regard to the dissent of a minority, it is manifest, as indicated above, that the plan here under attack involves much more than a sale of the corporate properties. On the contrary, the sale of New York Corporation's assets to Delaware Corporation is but one step, a preliminary phase, of a larger transaction. After the sale is consummated, a voting trust is to be created and the Delaware Corporation stock deposited therein. None of the provisions of section 20 apply to the disposition made by a corporation of the proceeds of a sale of assets; that section's authorization of rule by two-thirds vote of the shareholders has reference only to the consummation of the sale itself. Moreover, any voting trust would have to comply with the provisions of section 50 of the Stock Corporation Law. The plan under attack also envisages dissolution of the corporation after the creation of the trust, and distribution to the shareholders of voting trust certificates representing shares in Delaware Corporation. Section 20 obviously does not purport to regulate the powers of a corporation with respect to the distribution of its assets on dissolution. It follows that there is no legislative warrant for limiting plaintiff and other dissenters to the remedy of appraisal and payment for their stock,

and that plaintiff is free to contest the validity of the corporate action in the courts.

Upon examination of plaintiff's claim, it is my view that by the enactment of the challenged proposals the majority shareholders of New York Corporation breached the fiduciary obligations which they owed, by virtue of their effective control of the corporate affairs, to the minority stockholders. (See *Kavanaugh* v. *Kavanaugh Knitting Co.,* 226 N. Y. 185, 195.) For the majority here exercised their power, not for the corporate benefit, but for the purpose of furthering their own interests as stockholders at the expense of the interests of the minority.

Looking at the matter in the abstract, what possible corporate purpose could ever be served by creating a voting trust immediately prior to dissolution and depositing therein the shares of a wholly owned corporation? Such an action, it would seem, would almost always be vulnerable to challenge as a transaction designed to inhibit the stockholders' fundamental right to share in *all* of the corporate assets upon dissolution.

The objectives of the instant plan are easily perceived when it is remembered that the sale of New York Corporation's assets was to be made to a corporation organized by New York Corporation expressly for that purpose. Upon the dissolution of New York Corporation, Delaware Corporation, it was planned, would stand in its shoes, owning the same assets, deriving its revenue from the same source (the Central Zone building), and having outstanding the identical number of shares of stock. The only difference was to be that this stock would not be owned outright by the shareholders of the corporation, as had the New York Corporation stock, but would be held in trust for them by voting trustees. Whereas the shareholders had had full rights of participation in the affairs of New York Corporation, their right to vote upon the policies of Delaware Corporation was to be exercised for them by the trustees. Whereas they had had full rights of alienation with respect to the New York Corporation stock, they could dispose of their stock in Delaware Corporation only at such time and upon such terms as were determined by the trustees (with the consent of a large majority of the stock). Neither could they refuse to sell their stock once a sale had been thus decided upon. Since Delaware Corporation was to be merely the alter ego of New York Corporation, the effect of the resolutions adopted by two thirds of the stockholders of New York Corporation was to require every shareholder to assign his shares to a voting trust and to surrender

his right to vote on corporate affairs and his right to freely alienate his interest. That this could not have been done had New York Corporation been permitted to continue its existence, is clear. That it cannot be accomplished through the creation and interposition of another corporation, is equally clear. (See *Schwab* v. *Potter Co.,* 194 N. Y. 409.)

The *Schwab* case (decided after the adoption of the prototype of present Stock Corporation Law, § 20) bears an interesting and significant resemblance to the case at bar in that it, too, involved a situation where corporate property was to be sold to a corporation organized by the vendor, as part of a larger transaction which had an illegal objective. Under the corporate resolution challenged in that case, the corporation was to sell its principal asset, a valuable parcel of real estate, to a corporation organized for the purpose, in return for the entire capital stock of the new corporation. The stockholders of the old corporation were then to be given assignable rights to subscribe pro rata to the stock of the new corporation. The Court of Appeals, holding that plaintiff had stated a good cause of action for invalidation of the plan, wrote as follows (194 N. Y., p. 416):
" If, in the case before us, the proposed plan is carried into effect, the old corporation will be the only stockholder of the new corporation when it comes into being, which is the time to test its legality, and the entire capital stock of the latter will have been taken from the assets of the former. After the old corporation has thus split itself into two corporations, both together will have only the capital that the old corporation had before. Not a dollar of new capital will have been contributed either in money or property and only when the old corporation sells to subscribers or outsiders  *  *  *  all or a part of the shares of stock, issued to it by the new, can any money come from the transaction. This shows that the purpose of the strange action proposed is to increase the capital stock of the old company without complying with the provisions of the statute governing the subject. The increase is to be obtained by what is in effect a forced assessment upon the full paid and non-assessable shares of the stockholders, for unless they take new stock they lose a material part of their investment, although something they do not want is given in exchange. Thus they are virtually compelled by an unlawful scheme to enter into new contractual relations with strange parties. (*Mason* v. *Pewabic Mining Co.,* 133 U. S. 50.) This would be an obvious evasion of the law which the courts will restrain when applied to by the proper party.''

Just as the " strange action " proposed in the *Schwab* case (*supra*) was designed to circumvent the statutory requirements relating to the increase of corporate capital, so the equally strange action authorized in the present case was aimed at evading the provisions of section 50 of the Stock Corporation Law, regulating the creation of voting trusts. That statute does not admit of the compulsion of shareholders to surrender their shares to voting trustees; the essence of the voting trust is that all shareholders be " privileged " to subscribe to the trust " if they choose to do so ". (*Matter of Morse* [*Bank of America*], 247 N. Y. 290, 302.) The challenged plan, designed as it is to deprive the shareholders of New York Corporation of their right to a voice in the corporate affairs and of their right to freely alienate their interest in the corporation, is patently invalid and its enforcement and implementation will be enjoined by a court of equity.

Plaintiff's motion for judgment on the pleadings must accordingly be granted, and defendants' motion denied. It will not be necessary to enjoin and invalidate the sale of defendant corporation's assets to Delaware Corporation; that transfer, as we have seen, was effectuated pursuant to section 20 of the Stock Corporation Law and may not be challenged by plaintiff. The judgment herein will invalidate that portion of the resolution authorizing the creation of a voting trust and the distribution of the voting trust certificates to the stockholders of New York Corporation, and will direct the defendants to distribute to the shareholders one share of Delaware Corporation stock for each share of New York Corporation stock. In this way the illegal aspects of the present plan will be effectively nullified, and the sale to Delaware Corporation will be given effect.

It may be well, before concluding, to refer briefly to another substantial contention made by plaintiff. Section 50 authorizes the creation of a voting trust " for the purpose of conferring the right to vote " on the deposited stock upon the trustees, and it is settled that " No voting trust not within the terms of the statute is legal ". (*Matter of Morse* [*Bank of America*], 247 N. Y. 290, 298, *supra*.) Plaintiff, therefore, urges that the trust contemplated by the resolution would be invalid (at least in part) because the grant to the trustees is not limited to the right to vote on the shares, but extends to the right (conditional on the approval of the beneficial owners of a large block of the deposited stock) to sell the deposited stock to third parties. In view of the fact that I have found the plan invalid on a different

68

ground, it is not necessary at this time to pass upon this contention. (Cf., in addition to *Matter of Morse* [*Bank of America*], *supra*, *Matter of Bacon* [*Susquehanna Silk Mills*], 287 N. Y. 1, and *Matter of Brentmore Estates* v. *Hotel Barbizon*, 263 App. Div. 389.)

Plaintiff's motion for judgment on the pleadings is granted. Defendants' cross motion is denied.