Max Eisenberg, on Behalf of Himself and All Other Stockholders of Central Zone Property Corporation Similarly Situated, Appellant, v. Central Zone Property Corporation, Respondent, et al., Defendants.

Max Eisenberg, on Behalf of Himself and All Other Stockholders of Central Zone Property Corporation Similarly Situated, Appellant, v. Central Zone Realty, Inc., Respondent, et al., Defendants.

Argued May 28, 1953; decided October 22, 1953.

*Emil K. Ellis, Frank S. Samansky, Max Eisenberg,* in person, and *Abraham J. Heller* for Max Eisenberg, appellant. I. The Appellate Division was in error. (*Sage* v. *Culver,* 147 N. Y. 241; *Kavanaugh* v. *Kavanaugh Knitting Co.,* 226 N. Y. 185.) II. The plan was inherently illegal. (*McLeod* v. *Lincoln Medical Coll.,* 69 Neb. 550; *Schwab* v. *Potter Co.,* 194 N. Y. 409.) III. The plan compels plaintiff to accept a voting trust certificate in exchange for his stock. (*Elger* v. *Boyle,* 69 Misc. 273; *Matter of Vandenburgh* v. *Broadway Underground Connecting Ry. Co.,* 29 Hun 348; *Matter of Morse [Bank of America],* 247 N. Y. 290; *277 Park Ave. Corp.* v. *New York Central R. R. Co.,* 194 Misc. 417, 275 App. Div. 1028.) IV. The voting trust is illegal. (*Matter of Morse [Bank of America],* 247 N. Y. 290; *Manson* v. *Curtis,* 223 N. Y. 313; *Alderman* v. *Alderman,* 178 S. C. 8; *Sagalyn* v. *Milkins, Packard & Wheat,* 290 Mass. 434; *Sage* v. *Culver,* 147 N. Y. 241; *McManus* v. *Durant,* 168 App. Div. 643; *Forrester* v. *Boston & Montana Cons. Copper Co.,* 21 Mont. 544; *Knickerbocker Investment Co.* v. *Voorhees,* 100 App. Div. 414; *Gertenbach* v. *Rodnon,* 171 Misc. 302; *Wheeler* v. *Abilene Nat. Bank Bldg. Co.,* 159 F. 391.) V. Plaintiff cannot be compelled to accept appraisal as an alternative to an illegal plan. (*Schwab* v. *Potter Co.,* 194 N. Y. 409; *Continental Securities Co.* v. *Belmont,* 206 N. Y. 7; *Kent* v. *Quicksilver Mining Co.,* 78 N. Y. 159; *Meyerhoff* v. *Bankers Securities,* 105 N. J. Eq. 76.) VI. The acts of the New York corporation were *ultra vires.* (*Schwab* v. *Potter Co.,* 194 N. Y. 409; *McLeod* v. *Lincoln Medical Coll.,* 69 Neb. 550; *Forrester* v. *Boston & Montana Cons. Copper Co.,* 21 Mont. 544; *People* v. *Ballard,* 134 N. Y. 269; *Matter of Timmis,* 200 N. Y. 177;

*Bertles* v. *Nunan,* 92 N. Y. 152; *Matter of Carnegie Trust Co.,* 151 App. Div. 606, 206 N. Y. 390; *People* v. *Schaller,* 224 App. Div. 3; *Hoag* v. *Edwards,* 69 Misc. 237; *Strauss* v. *Midtown Enterprises,* 270 App. Div. 837; *Matter of Macdonald,* 205 App. Div. 579.) VII. The transfer from the New York to the Delaware corporation was not a sale within the meaning of section 20 of the Stock Corporation Law. (*Halstead* v. *Globe Ind. Co.,* 258 N. Y. 176; *Schwab* v. *Potter Co.,* 194 N. Y. 409; *Taylor* v. *Earle,* 8 Hun 1; *Murrin* v. *Archbald Cons. Coal Co.,* 196 App. Div. 107, 232 N. Y. 541; *Dalsheimer* v. *Graphic Arts Co.,* 86 N. J. Eq. 49; *Kremer* v. *Public Drug Co.,* 41 S. D. 365; *Botts* v. *Simpsonville & B. C. Turnpike Co.,* 10 S. W. 134 [Ky.]; *Gresham* v. *Island City Sav. Bank,* 21 S. W. 556 [Tex.]; *Pittsburg* v. *Garret,* 34 N. E. 493 [Ohio]; *Tanner* v. *Lindell,* 79 S. W. 155 [Mo.].) VIII. Strict compliance with section 20 of the Stock Corporation Law is not sufficient. There must be good faith and a proper corporate purpose. (*Hinds* v. *Fishkill & Matteawan Equitable Gas Co.,* 96 App. Div. 14; *Kavanaugh* v. *Kavanaugh Knitting Co.,* 226 N. Y. 185; *Murrin* v. *Archbald Cons. Coal Co.,* 232 N. Y. 541; *People* v. *Ballard,* 134 N. Y. 269; *Godley* v. *Crandall & Godley Co.,* 212 N. Y. 121; *Everett* v. *Phillips,* 288 N. Y. 227; *Hoag* v. *Edwards,* 69 Misc. 237; *Schwab* v. *Potter Co.,* 194 N. Y. 409; *McLeod* v. *Lincoln Medical Coll.,* 69 Neb. 550; *Koehler* v. *St. Mary's Brewing Co.,* 228 Pa. 648; *Jones* v. *Grinnel,* 179 F. 2d 873.) IX. The transfer to the Delaware corporation was an integral part of an illegal plan and was therefore itself illegal. (*Manson* v. *Curtis,* 223 N. Y. 313; *Saratoga Co. Bank* v. *King,* 44 N. Y. 87; *Adler* v. *Zimmerman,* 233 N. Y. 431; *Carmine* v. *Murphy,* 285 N. Y. 413; *Sturm* v. *Truby,* 245 App. Div. 357; *Matter of Co-Operative Law Co.,* 136 App. Div. 901, 198 N. Y. 479.)

*Simon H. Rifkind, Samuel J. Silverman* and *Bernard H. Greene* for respondents. I. The proposed plan serves a proper corporate purpose — financial benefit to the stockholders. Absent a violation of statute, the proposed plan does not contravene public policy; it does not improperly curtail stockholders' control or the alienability of their interests. (*United States* v. *Cumberland Public Service Co.,* 338 U. S. 451; *Bank of New York* v. *Kennedy,* 183 Misc. 819, 269 App. Div. 747; *Schwab* v. *Potter Co.,* 194 N. Y. 409.) II. The plan does not

violate any statute. Each step of the plan is authorized by express statute. (*Matter of Timmis,* 200 N. Y. 177; *Giles Dyeing Mach. Co.* v. *Klauder-Weldon Dyeing Mach. Co.,* 212 App. Div. 771, 243 N. Y. 547; *Mertz* v. *Guaranty Trust Co.,* 247 N. Y. 137; *Murrin* v. *Archbald Cons. Coal Co.,* 196 App. Div. 107, 232 N. Y. 541; *Halstead* v. *Globe Ind. Co.,* 258 N. Y. 176; *Schwab* v. *Potter Co.,* 194 N. Y. 409; *Taylor* v. *Earle,* 8 Hun 1; *Matter of Bacon* [*Susquehanna Silk Mills*], 287 N. Y. 1; *Matter of Rowe,* 107 Misc. 549; *Matter of Baczkowska* v. *2166 Operating Corp.,* 304 N. Y. 811; *Chandler* v. *Bellanca Aircraft Corp.,* 19 Del. Ch. 57; *Cooney Co.* v. *Arlington Hotel Co.,* 11 Del. Ch. 286, 12 Del. Ch. 174; *Orpheum Bldg. Co.* v. *Anglim,* 127 F. 2d 478; *277 Park Ave. Corp.* v. *New York Central R. R. Co.,* 194 Misc. 417, 275 App. Div. 1028; *Matter of Brentmore Estates* v. *Hotel Barbizon,* 263 App. Div. 389.) III. Appraisal is plaintiff's exclusive remedy. The Appellate Division properly granted judgment on the pleadings in the New York action and dismissal of the complaint in the Delaware action. (*Abbot* v. *American Hard Rubber Co.,* 33 Barb. 578; *People* v. *Ballard,* 134 N. Y. 269; *Anderson* v. *International Minerals & Chemical Corp.,* 295 N. Y. 343; *Beloff* v. *Consolidated Edison Co. of N. Y.,* 300 N. Y. 11; *Liebschutz* v. *Schaffer Stores Co.,* 276 App. Div. 1; *Blumenthal* v. *Roosevelt Hotel,* 202 Misc. 988; *Murrin* v. *Archbald Cons. Coal Co.,* 196 App. Div. 107, 232 N. Y. 541.)

CONWAY, J. The plaintiff more than twenty years ago purchased at public offering one $500 bond secured by a mortgage upon land and a building on East 45th Street in New York City. Difficulties arose during the depression period followed by the formation of a bondholder's protective committee, reorganization, the issuance to plaintiff of five new bonds plus five shares of stock represented by voting trust certificates in a new New York corporation then organized and known as Central Zone Property Corporation (hereinafter referred to as New York Corporation). The plaintiff retained the new bonds then issued and with the passage of years they have been paid in full. He has also retained his five shares of stock. The questions presented here have to do with those five shares of stock.

The assets of New York Corporation consist in the main of the land and building on East 45th Street and it is claimed they have a market value of approximately $3,000,000 subject to a mortgage of $1,440,000. There is thus an equity for the stockholders of more than $1,000,000 and the gross receipts from the building have increased progressively between 1945 and 1951.

In March of 1952, the security holders in New York Corporation received a letter to stockholders and voting trust certificate holders and a notice of special meeting. Some had not exchanged their voting trust certificates received on the reorganization in the depression period but were to be permitted to vote as though they had exchanged them for stock certificates. Those owning the totality of stock certificates and voting trust certificates will be referred to hereafter (as they are sometimes in the record) as stockholders. The letter advised that the principal stockholders had " considered the feasibility of an arrangement which would enable the stockholders *as a group* to realize a return on their stock. It is believed that a better price can be obtained for all the shares of stock if they could be sold and delivered *as a unit."* Accordingly, said the letter, there had been formulated an outlined plan " which would make it possible to sell all the stock of the Corporation [New York Corporation] *as a unit* when a satisfactory offer is obtained ". (Emphasis supplied.) The *unit* sale of stock in New York Corporation was the end to be accomplished by the outlined plan. This purpose required a transfer of all the assets of New York Corporation and then the succeeding steps in the plan to the end that plaintiff would be compelled to join in a *unit* sale, or as an alternative, to seek an appraisal and cease to be a stockholder. That which was to be accomplished was to take unlawfully from the plaintiff many of his stockholder rights and to impose restrictions upon him never contemplated by any of our statutes. Toward the end of the letter there was a statement that counsel for New York Corporation had obtained a ruling from the Bureau of Internal Revenue that the consummation of the plan would not result in taxable gain or deductible loss to New York Corporation, to a Delaware corporation to be formed or to

the shareholders of the corporation. That was for the reason, as we are informed in the letter to the stockholders and respondent's brief, the only design and effect to be accomplished was a dissolution, distribution and liquidation of the New York Corporation and its assets.

The plan as set forth also in the notice of the special meeting of stockholders involved the following steps:

1. The *transfer* of all assets of New York Corporation to a Delaware corporation *to be formed,* with an identical capital structure, in *exchange* for the assumption by the corporation thus to be formed, of the liabilities of New York Corporation and the issuance to New York Corporation of all of the authorized capital stock of the Delaware Corporation (as it will hereafter be called). The Delaware Corporation was to have no other assets on formation.

2. The deposit by New York Corporation of all the shares of stock of the Delaware Corporation when received, in a voting trust to be formed, of which two named directors of New York Corporation and a third named stockholder would be voting trustees pursuant to a voting trust agreement which would "confer upon the Voting Trustees the right to elect directors" and would also contain, in effect, provisions authorizing the voting trustees "*to sell all of the deposited stock * * * as a unit* for such consideration in money, notes, mortgages, leases, securities, or otherwise, as they may deem advisable" provided that the sale was consented to by the holders of voting trust certificates (there would in fact be only one voting trust certificate holder initially — New York Corporation since it was the sole stockholder of the Delaware Corporation and sole owner of the deposited stock — and whether the voting trust certificates of Delaware Corporation stock were to pass to stockholders of New York Corporation by affirmative exchange by stockholders or by operation of law upon dissolution of New York Corporation is in dispute, as we shall later see) representing at least 66 ⅔% of the deposited shares of stock and that there was not written objection by 20% or more of such holders within thirty days after the giving of written notice of the terms of the proposed sale. (Emphasis supplied.) Then followed this proposed term of

the voting trust agreement: '' The terms of any proposed sale [of the deposited stock] may include an agreement by the purchaser of the stock to have the real property owned by the Delaware Corporation *leased to a new corporation to be organized by the Voting Trustees,* and in such case the Voting Trustees may organize a new corporation to act as lessee *and may lend or contribute to it such part of any net cash proceeds of the sale which* may in their judgment be required by such new corporation.'' (Emphasis supplied.)

Other terms of the proposed voting trust agreement are not material at this point.

3. The amendment of the certificate of incorporation of the New York Corporation to authorize the transactions set forth in the notice of special meeting.

4. The dissolution of the New York Corporation '' upon the *consummation* of the foregoing proposals '' and the distribution to each stockholder of the New York Corporation in exchange for his stock (or equivalent security) of *a voting trust certificate* representing the same number of shares of stock of the Delaware Corporation as are owned by such stockholder in the New York Corporation. (Emphasis supplied.) The brief of the respondent asserts, thus differing from the notice of special meeting to stockholders, that the distribution of the voting trust certificates will be acquired by New York Corporation stockholders only by operation of law upon the dissolution of New York Corporation rather than from affirmative distribution of voting trust certificates in exchange for stock of New York Corporation since the individual stockholders of New York Corporation were never holders of the Delaware Corporation stock which was transferred to the voting trustees.

In other words New York Corporation, under the plan, was to transfer its assets to Delaware Corporation in exchange for 100% of Delaware Corporation stock, and was to trustee that stock in a voting trust, receiving voting certificates for it. New York Corporation was then to dissolve and distribute to each of its stockholders in return for his stock (or equivalent security) a voting trust certificate representing the same number of shares of stock of Delaware Corporation as were owned

by such stockholder in New York Corporation. That would give each stockholder of New York Corporation a voting trust certificate representing stock of the Delaware Corporation of which the three voting trustees had conditional power of disposition and which the stockholders of New York Corporation before its dissolution were to authorize them to *sell as a unit* upon proper determinable terms. Finally, the letter said: " Upon the sale of the deposited stock the Voting Trust will terminate and, in the manner provided by the Voting Trust Agreement, there will be distributed *pro rata* to the Voting Trust Certificate Holders the net consideration received on the sale, after payment of expenses and other deductions, together with the capital stock of any new corporation that may have been organized by the Voting Trustees for the purpose of acting as lessee." The voting trust was to continue for ten years unless earlier terminated in a manner provided therefor.

The plaintiff has brought these actions in an effort to prevent the consummation of the plan of the " principal stockholders ".

Stockholders may not be forced out of corporations by any such method at the hands of directors or officers or " principal stockholders ". The Legislature has not sanctioned it and the claim of respondent that section 20 of the Stock Corporation Law permits it, is without merit. At common law neither the majority stockholders nor the directors could bring about a sale or cause a transfer of any portion of the property, essential for the transaction of its customary business, of a solvent, prosperous corporation, which was justifying the reason for its corporate existence, against the will of a minority however small (*Abbot* v. *American Hard Rubber Co.,* 33 Barb. 578; *People* v. *Ballard,* 134 N. Y. 269; *Matter of Timmis,* 200 N. Y. 177). As a result, certain injustice to both majority and minority stockholders followed. A solution was achieved by the legislation which is now embodied in section 20 of the Stock Corporation Law. This enabled the holders of two thirds of the shares of stock to " sell and [or] convey " its property, rights, privileges and franchises or any interest therein and those opposed, if they so desired, were granted the right to an appraisal of, and payment for, the value of its stock. The

statute was in derogation of the common law and, therefore, under applicable rules, has wrought a change only insofar as is expressed in, and required by, its provisions and the mischief to be remedied. (McKinney's Cons. Laws of N. Y., Book 1, Statutes [1942 ed.], § 301.) To put it simply, upon receipt of the notice of special meeting and the letter to stockholders, plaintiff, after more than twenty years of investment, was suddenly faced with the necessity of deciding, according to respondent's theory of the applicable law, between two alternatives. He could (1) agree to a transfer of the land and building on East 45th Street in exchange for stock in the corporation to be formed, (2) consent to the trusteeship of such stock in the hands of voting trustees, and (3) agree that the voting trustees in their discretion, under certain specified methods of authorization, might form a second corporation to become lessee of the land and building of which the corporation of which he was a stockholder had been up to that time the fee owner. The sole other alternative of plaintiff, as respondent reads section 20 of the Stock Corporation Law, was to give up his investment, accept the appraisal value of his stock and get out of the New York Corporation so that the principal stockholders might sell all the stock of the first-to-be-formed Delaware Corporation, *as a unit*. The Legislature never sanctioned such treatment of a minority stockholder and, on application, equity will forbid it. (*Kavanaugh* v. *Kavanaugh Knitting Co.*, 226 N. Y. 185, 196 [1919].)

In truth, of course, there was to be no dissolution of New York Corporation as our Legislature intended in enacting sections 105 and 106 of the Stock Corporation Law despite the words " dissolve " and " distribute " found in subdivision numbered 4 in the notice of special meeting and in the letter to stockholders. In the absence of rights of creditors, New York Corporation was trustee of its assets to distribute them upon dissolution pro rata among its stockholders. (Perry on Trusts and Trustees [6th ed.], § 242; *Sage* v. *Culver*, 147 N. Y. 241.) Under section 105 of the Stock Corporation Law, the directors of New York Corporation would be the ones to wind up its affairs, sell its assets and distribute them among its stockholders. Those assets were to be exchanged for the stock of the Dela-

ware Corporation. Far from a distribution pro rata of Delaware Corporation stock to plaintiff, that stock was to be trusteed in its entirety to voting trustees clothed with conditional power granted in advance to form a new corporation to become lessee, instead of owner, of the same building on East 45th Street with authority to lend or contribute to that new corporation such part of any net cash proceeds of the sale which might in their judgment be required by it.

Plaintiff has brought one action on behalf of himself and all other stockholders of New York Corporation similarly situated, against that corporation and three individuals as officers, directors and owners, or in control, of the majority of its stock. That action has been denominated by the parties the New York action. The amended complaint alleges that the plan outlined above was devised by the respondent in its own interest and was intended to deprive stockholders of all voting rights; that the acts proposed under the plan were *ultra vires* and that the plan was illegal and void in that it compelled plaintiff either to ask for an appraisal or become a holder of voting trust certificates representing stock in another corporation in place of his stock. The corporation was served and answered, admitting substantially the nonconclusory allegations of the amended complaint and both plaintiff and respondent corporation moved for judgment on the pleadings under rule 112 of the Rules of Civil Practice. Special Term granted plaintiff's motion and denied respondent's. The Appellate Division reversed, granted respondent's motion and dismissed the complaint. We think that the amended complaint states a cause of action, that the motion of defendant for judgment on the pleadings should be denied and the motion of plaintiff for judgment on the pleadings should be granted.

Plaintiff also brought a second action on behalf of himself and all other stockholders of New York Corporation similarly situated, against Central Zone Realty, Inc., a Delaware Corporation, and three individuals as officers and directors of New York Corporation and officers and directors of the Delaware Corporation. That action has been denominated the Delaware action. The complaint alleged, among other facts, after annexing as exhibits A and B the exhibits which had that lettering

when attached to the complaint in the New York action, that an action had been commenced to enjoin the New York Corporation and the individual respondents therein from putting the challenged plan into effect; that in such action it was alleged that the plan was illegal and void; that the said action was pending; that, with knowledge of such pendency, the Delaware Corporation accepted a transfer of the assets of New York Corporation. Judgment was sought vacating the transfer and enjoining defendants from taking further steps under the plan. The respondent Delaware Corporation, which was served, answered admitting the factual allegations of the complaint as outlined. Plaintiff moved for a temporary injunction and respondent Delaware Corporation moved to dismiss the complaint. Special Term granted respondent's motion and denied plaintiff's. The Appellate Division affirmed and granted leave to appeal from the judgment of affirmance. We hold that the complaint states a cause of action.

In the first above-entitled action the judgment of the Appellate Division should be reversed and the order of Special Term granting the motion of appellant and denying the motion of respondent for judgment on the pleadings affirmed, with costs in this court and in the Appellate Division.

In the second above-entitled action the judgment of the Appellate Division and the order of Special Term, insofar as they dismissed the complaint herein, should be reversed and the motion to dismiss the complaint denied, with costs in all courts. The appeal from so much of the judgment and order as denied the motion for a temporary injunction is dismissed. The certified question is not answered.

FULD, J. (concurring). The plan evolved was designed to accomplish the perfectly proper corporate purpose of keeping taxes at a minimum, upon a possible future sale of the corporation's properties, and it may not be denied that the consummation of the plan might well have resulted in a gain to all concerned, corporation and stockholders alike. But that does not mean that the corporation is in a position to insist that plaintiff — a holder of five shares of stock out of some 21,000 shares outstanding — either agree to the plan or, objecting to it, seek an appraisal pursuant to sections 20 and 21 of the Stock Corporation Law. To

be able to take advantage of those provisions, the corporation must establish that the proposed plan is within their coverage, and that it cannot do. In my view — and it is for this reason that I concur for reversal —*the series of transactions* contemplated by the plan involve far more than a '' sale '' or a '' conveyance '' of corporate assets, within the sense of the applicable statute. That being so, there is, as the court at Special Term expressed it, '' no legislative warrant for limiting plaintiff and other dissenters to the remedy of appraisal and payment for their stock, and    *    *    *    plaintiff is free to contest the validity of the corporate action in the courts '' (203 Misc. 59, 64-65).

LEWIS, Ch. J., DESMOND, DYE and FROESSEL, JJ., concur with CONWAY, J.; FULD, J., concurs in separate opinion; VAN VOORHIS, J., taking no part.

Judgment accordingly.