WILLIAM LEHRMAN, Plaintiff, *v.* GODCHAUX SUGARS, INC., Defendant.

Supreme Court, Special Term, New York County, February 28, 1955.

*John B. Doyle* for plaintiff.

*John J. Leighton, Albert D. Jordan* and *Michael L. Matar* for defendant.

HOFSTADTER, J.   This application to require the plaintiff to give security pursuant to section 61-b of the General Corporation Law for the defendant's reasonable expenses in this action

again poses the question whether the action is brought derivatively in the right of the corporation, or whether it is representative, solely on behalf of the plaintiff and other stockholders similarly situated. The statute provides that in "any action instituted or maintained in the right of any foreign or domestic corporation" by the holder or holders of less than 5% of the outstanding shares of any class of its stock, unless the market value of the stock held exceeds $50,000, "the corporation in whose right such action is brought" shall be entitled to security. Admittedly, the plaintiff, a holder of the defendant's Class A capital stock, holds less than 5% of the outstanding Class A stock and the market value of his stockholdings does not exceed $50,000. Thus, the sole question is whether the action is brought in the right of the corporation.

The action is brought to enjoin a proposed recapitalization. Though the recapitalization has already been approved at a stockholders' meeting held on December 15, 1954, in the interest of brevity, the capital structure before this meeting will be referred to as in the present. The defendant now has an authorized capital stock of 430,500 shares, consisting of 30,500 shares of prior preferred stock, 200,000 shares of Class A and 200,000 shares of Class B stock. As of November 1, 1954, there were outstanding, exclusive of shares held in the treasury, 28,476 shares of prior preferred, 85,250 shares of Class A and 83,250 shares of Class B stock. The prior preferred stock is entitled to cumulative preferred dividends at the rate of $4.50 per share per year and to payment of $100 with accrued dividends on dissolution, liquidation or merger, before any payment or distribution is made to the holders of the Class A or Class B stock.

The Class A stock is now entitled to noncumulative dividends of $4 per share per year before any dividends are paid on the Class B stock. After dividends of $4 per share have been paid on the Class A stock in any year, the Class B stock is entitled to noncumulative dividends of $4 per share before any additional dividends are paid on the Class A stock. After both Class A and Class B stock have received dividends of $4 per share, they are entitled to share equally in any further dividend distribution. On dissolution, liquidation or merger, subject to the rights of the prior preferred stock, the Class A stock is entitled to a liquidating payment of $50 a share, then the Class B stock is also entitled to a liquidating payment of $50 a share, and the Class A and Class B stock are then

entitled to share equally in the remaining proceeds of any liquidation.

The proposed recapitalization makes no change in the number of authorized shares or in the rights or preferences of the present prior preferred stock. It does, however, make substantial changes in the respective rights of the Class A and Class B stock, and the plaintiff insists that these changes are completely unfair to the Class A stock.

Under the plan the authorized number of shares of Class B stock is increased from 200,000 to 1,000,000. While the Class A stock continues to be entitled to noncumulative dividends of $4 per share per year before any dividends are paid on the Class B stock, it will no longer share in any additional dividends, for the Class B stock exclusively becomes entitled to any dividends over and above the $4 noncumulative dividend to the Class A stock. On liquidation the Class A stock becomes entitled to $60 per share and any declared and unpaid dividends thereon, but no more. All the remaining proceeds of liquidation will be distributable solely to the Class B stock. The Class A stock is, at the option of its holders, convertible into Class B stock until December 15, 1964, on the basis of 11 shares of Class B for 10 shares of Class A stock. This right of conversion is, however, subject to the corporation's option to redeem the Class A stock on 30 days' notice at $60 per share and any declared and unpaid dividends thereon.

The complaint annexes the notice of the stockholders' meeting for the consideration of the recapitalization plan, together with an accompanying proxy statement. According to the proxy statement, the liquidating value of the Class A stock as of July 1, 1954, is $61.39 per share. The complaint charges that the proxy statement is false and misleading, principally because the liquidating value of $61.39 per share is based on book value. It is alleged that this book value rests on appraisals made many years ago and that the defendant's assets have in the meantime appreciated materially, and that consequently the true liquidating value of the Class A stock is over $120 a share. The plaintiff claims that the $60 per share ascribed to the Class A stock under the recapitalization is, thus, inadequate, and that the limitation of the Class A stock to annual dividends of $4 a share and to $60 on liquidation discriminates against the Class A stock in favor of the Class B stock. He urges, moreover, that the right to convert the Class A stock into Class B stock is, in effect, nullified by the privilege of redeeming the Class A stock reserved to the defendant.

The merits of these contentions are not now of moment. In the proxy statement the management expresses the opinion that the existing capital structure of the corporation is "unwieldy and operates to retard possible growth and expansion." The increase in the number of authorized Class B shares from 200,000 to 1,000,000 is recommended "to have available sufficient Class B shares for issuance in the event of possible future expansion or in the event of possible future need of additional equity capital." These statements are not elaborated upon and neither the proxy statement nor the affidavits on the present application suggest any imminent growth and expansion or any contemplated resort to added equity financing.

Does the plaintiff, in attacking the proposed recapitalization, assert a right of the corporation? Unless he does, his action is not brought in its right and he may not be required to give security. The basic distinction between a derivative and a representative action brought by a stockholder is admirably stated by Judge WEINFELD of the United States District Court in *Schreiber* v. *Butte Copper & Zinc Co.* (98 F. Supp. 106), in the following language: "An action may be said to be representative when it is based upon a primary or personal right belonging to the plaintiff-stockholder and those of his class. It is derivative when the action is based upon a primary right of the corporation but which is asserted on its behalf by the stockholder because of the corporation's failure, deliberate or otherwise, to act upon the primary right. * * * Thus, we must determine whether the right of action exists in the plaintiff — as a primary right — or whether it is derived from the corporation or secondarily because of its failure to act." (Pp. 112–113.)

The application of this test to a given situation is often beset with difficulty, as was pointed out by Justice BREITEL at Special Term in *Gordon* v. *Elliman* (202 Misc. 612), in which he also quoted from Judge WEINFELD's opinion. The holding at Special Term that an action by a stockholder against the corporation and its directors to compel the declaration of dividends is one in the right of the corporation was affirmed in the Court of Appeals by a closely divided court (306 N. Y. 456). The majority reasoned that the plaintiff in seeking equitable relief was vindicating the corporation's right to be properly managed and to have a sound dividend policy, rather than an individual right adverse to that of the corporation. The defendant here leans heavily on *Gordon* v. *Elliman* (*supra*).

The defendant also cites *Selman* v. *Allen* (121 N. Y. S. 2d 142), and *Christie* v. *Fifth Madison Corp.*, 124 N. Y. S. 2d 492). The

situation in these cases was, however, not analogous to that found here. In the former, the stockholder sought to prevent the exercise of an option to purchase the corporation's stock from it at a price substantially less than its market value. In the latter, while the plaintiff complained of a voluntary reorganization plan as unfair to the class of stock held by him, the complaint in reality was that the reorganization would saddle the corporation with a debt structure it could not possibly carry and which would inevitably lead to disaster. In both these instances the stockholder assailed transactions which directly affected the interests of the corporation as such. In the one, the corporation was about to sell its property for less than it was worth; in the other, the corporation was undertaking a reorganization which meant doom, instead of revival. The objective in each case was to prevent corporate waste and mismanagement.

The plaintiff here complains of no wrong to the corporation. Simply stated, he says that the recapitalization unfairly benefits the Class B stock at the expense of the Class A stock which he owns. In essence, we have a contest between the two classes of stock. Judge FULD in his dissenting opinion in *Gordon* v. *Elliman* uses such a contest as an illustration of one which concerns the stockholders affected, rather than the corporation (306 N. Y. 456, 472-473). The corporation's interest here lies primarily in the necessity for formal corporate action by it to consummate the proposed plan.

In a sense, of course, the corporation and its stockholders usually have the same interests. This normal community of interest must not, however, obscure the line of demarcation between the juridical bases of their respective rights.

The vague suggestion in the proxy statement that at some time hereafter the corporation may find the reclassification to its advantage, not fortified by anything in the moving papers, is insufficient basis for a determination that it has a present interest in the controversy or that the plaintiff is, in law, acting on its behalf. Accordingly, the motion for security is denied. The defendant may answer or otherwise move with respect to the complaint within ten days after service of a copy of the order hereon.