**Max EISENBERG, as stockholder of The Flying Tiger Line, Inc., on behalf of himself and all other stockholders of said corporation similarly situated, Plaintiffs-Appellants,**

**v.**

**The FLYING TIGER LINE, INC., Defendant-Appellee,**

**Robert W. Prescott, Wayne M. Hoffman, Houston Restig, Norman L. Myers, Charles Luckman, Laurence C. Cragie, J. Howard Edgerton, The Flying Tiger Corporation and FTL Air Freight Corporation, Defendants.**

**No. 8, Docket 35613.**

United States Court of Appeals, Second Circuit.

Argued Sept. 14, 1971.

Decided Oct. 22, 1971.

Max Eisenberg, New York City, for plaintiffs-appellants.

Lewis Henkind, New York City (Stein & Rosen, New York City, Allan A. Pines, New York City, of counsel), for defendant-appellee.

Before KAUFMAN, ANDERSON and FEINBERG, Circuit Judges.

268

IRVING R. KAUFMAN, Circuit Judge:

Max Eisenberg, a resident of New York, "as stockholder of The Flying Tiger Line, Inc. [Flying Tiger], on behalf of himself and all other stockholders of said corporation similarly situated" commenced this action in the Supreme Court of the State of New York to enjoin the effectuation of a plan of reorganization and merger. Flying Tiger, a Delaware corporation with its principal place of business in California, removed the action to the District Court for the Eastern District of New York.[1]

Flying Tiger pleaded several affirmative defenses and moved for an order to require Eisenberg to comply with New York Business Corporation Law § 627 (McKinney's Consol.Laws, c. 4 1963), which requires a plaintiff suing derivatively on behalf of a corporation to post security for the corporation's costs.[2] Judge Travia granted the motion without opinion and afforded Eisenberg thirty days to post security in the sum of $35,000. Eisenberg did not comply, his action was dismissed and he appeals. We find Eisenberg's cause of action to be personal and not derivative within the meaning of § 627. We therefore reverse the dismissal.

In this action, Eisenberg is seeking to overturn a reorganization and merger which Flying Tiger effected in 1969. He charges that a series of corporate maneuvers were intended to dilute his voting rights. In order to achieve this end, he alleges, Flying Tiger in July 1969 organized a wholly owned Delaware subsidiary, the Flying Tiger Corporation ("FTC"). In August, FTC in turn organized a wholly owned subsidiary, FTL Air Freight Corporation ("FTL"). The three Delaware corporations then entered into a plan of reorganization, subject to stockholder approval, by which Flying Tiger merged into FTL and only FTL survived. A proxy statement dated August 11 was sent to stockholders, who approved the plan by the necessary two-thirds vote at the stockholders' meeting held on September 15.

Upon consummation of this merger Flying Tiger ceased as the operating company, FTL took over operations and Flying Tiger shares were converted into an identical number of FTC shares. Thereafter, FTL changed its name to "Flying Tiger Line, Inc.," for the obvious purpose of continuing without disruption the business previously conducted by Flying Tiger. The approximately 4,500,000 shares of the company traded on the New York and Pacific Coast stock exchanges are now those of the holding company, FTC, rather than those of the operating company, Flying Tiger. The effect of the merger is that business operations are now confined to a wholly owned subsidiary of a holding company whose stockholders are the former stockholders of Flying Tiger.

It is of passing interest that Eisenberg contends that the end result of this complex plan was to deprive minority stockholders of any vote or any influence over the affairs of the newly spawned company. Flying Tiger insists the plan was devised to bring about diversification without interference from the Civil Aeronautics Board, which closely regulates air carriers, and to better use available tax benefits. Even if any of these motives prove to be relevant, the alleged illegality is not relevant to the questions before this court. We are called on to decide, assuming Eisenberg's complaint is sufficient on its

1. Several officers and directors of Flying Tiger were named but not served as defendants. None of them is a citizen of New York.

2. Business Corporation Law § 627 reads in pertinent part:
   "In any action specified in section 626 * * * [if plaintiffs own less than 5% or $50,000 worth of stock] * * * the corporation in whose right such action is brought shall be entitled at any stage of the proceedings before final judgment to require the plaintiff or plaintiffs to give security for reasonable expenses, including attorney's fees, which may be incurred by it * * *."

face, only whether he should have been required to post security for costs as a condition to prosecuting his action.

■ To resolve this question we look first to Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 62 S.Ct. 1221, 93 L.Ed. 1528 (1949), which instructs that a federal court with diversity jurisdiction must apply a state statute providing security for costs if the state court would require the security in similar circumstances. *Cohen* teaches that the applicability of costs security statutes cannot be determined upon a simplistic determination whether substantive or procedural law will govern. Justice Jackson, writing for the Court concluded that Erie RR. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), compelled the utilization of such statutes in federal courts. But, this Court still must determine whether to apply the New York costs security statute, Business Corporation Law § 627, or, as Eisenberg contends, Delaware law, which has no such requirement. New York clearly has indicated that § 627 will be applied in its courts whether or not New York substantive law controls the merits of the case. Business Corporation Law § 1319(a) (3) expressly enables foreign corporations doing business in New York to invoke § 627 against resident plaintiffs. *See also,* Gilbert v. Case, 3 A.D.2d 930, 163 N.Y. S.2d 179, 181 (App.Div.2d Dept.), rearg. and app. denied, 164 N.Y.S.2d 995, motion dismissed, 3 N.Y.2d 876, 166 N.Y. S.2d 498, (1957) (General Corporation Law § 61–a, predecessor of § 627, "may be invoked by a foreign corporation provided that it is doing business here and thus subjects itself to the jurisdiction of the courts of this State"). Since New York courts would invoke its own law on security for costs rather than Delaware's, we are required to do the same. *See* Klaxon Co. v. Stentor Elec. Mfg.

Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L. Ed. 1477 (1941).

■ Eisenberg argues, however, that New York courts would refuse to invoke § 627 in the instant case because the section applies exclusively to derivative actions specified in Business Corporation Law § 626.[3] He urges that his class action is representative and not derivative.

We are told that if the gravamen of the complaint is injury to the corporation the suit is derivative, but "if the injury is one to the plaintiff as a stockholder and to him individually and not to the corporation," the suit is individual in nature and may take the form of a representative class action. 13 Fletcher, Private Corporation § 5911 (1970 Rev. Vol.). This generalization is of little use in our case which is one of those "borderline cases which are more or less troublesome to classify." *Id.* The essence of Eisenberg's claimed injury is that the reorganization has deprived him and fellow stockholders of their right to vote on the operating company affairs and that this right in no sense ever belonged to Flying Tiger itself. This right, he says, belonged to the stockholders *per se.* Flying Tiger notes, however, that the stockholders were harmed, if at all, only because their company was dissolved, and their vote can be restored only if that company is revived. It insists, therefore, that stockholders are affected only secondarily or derivatively because we must first breathe life back into their dissolved corporation before the stockholders can be helped.

Despite a leading New York case which would seem at first glance to support Flying Tiger's position, we find that its contention misses the mark by a wide margin in its failure to distinguish between derivative and non-derivative class actions. In Gordon v. Elliman, 306 N.Y. 456, 119 N.E.2d 331 (1954), by a

3. Business Corporation Law § 626 reads, in pertinent part:
"(a) An action may be brought in the right of a domestic or foreign corpora-

tion to procure a judgment in its favor * * *."

vote of 4 to 3, the Court of Appeals took an expansive view of the coverage of § 627's predecessor, General Corporation Law § 61–b. The majority held that an action to compel the payment of a dividend was derivative in nature and security for costs could be required. The test formulated by the majority was "whether the object of the lawsuit is to recover upon a chose in action belonging directly to the stockholders, or whether it is to compel the performance of corporate acts which good faith requires the directors to take in order to perform a duty which they owe to the corporation, and through it, to its stockholders." 306 N.Y. at 459, 119 N.E.2d at 334. Pursuant to this test it is argued that, if Flying Tiger's directors had a duty not to merge the corporation, that duty was owed to the corporation and only derivatively to its stockholders. Both the 4–1 Appellate Division and the 4–3 Court of Appeals opinions evoked the quick and unanimous condemnation of commentators.[4] Moreover, this test, "which appears to sweep away the distinction between a representative and a derivative action," in effect classifying all stockholder class actions as derivative, has been limited strictly to its facts by lower New York courts.[5] Lazar v. Knolls Cooperative Section No. 2, Inc., 205 Misc. 748, 130 N.Y.S.2d 407, 410 (Sup.Ct.1954). See also, Lehrman v. Godchaux Sugars, Inc., 207 Misc. 314, 138 N.Y.S. 163 (Sup.Ct.1955); (action to enjoin a recapitalization); Davidson v. Rabinowitz, 140 N.Y.S.2d 875 (Sup. Ct.1955) (Botein, J.) (action to force dissolution). In *Lazar*, a stockholder sought to force directors to call a stockholders' meeting. The court stated security for costs could not be required where a plaintiff

> "does not challenge acts of the management on behalf of the corporation. He challenges the right of the present management to exclude him and other stockholders from proper participation in the affairs of the corporation. He claims that the defendants are interfering with the plaintiff's rights and privileges as stockholders."

130 N.Y.S. at 410, 205 Misc. at 752. In substance, this is a similar to what Eisenberg challenges here.

The legislature also was concerned with the sweeping breadth of *Gordon*. In the recodification of corporate statutes completed in 1963, it added three words to the definition of derivative suits contained in § 626. Suits are now derivative only if brought in the right of a corporation to procure a judgment "in its favor."[6] This was to "forestall any such pronouncement in the future as that made by the Court of Appeals in Gordon v. Elliman." Hornstein, "Analysis of Business Corporation Law," 6 McKinney's Consolidated Laws of New York Ann. 483 (1963).

Other New York cases which have distinguished between derivative and representative actions are of some interest. In Horwitz v. Balaban, 112 F.Supp. 99 (S.D.N.Y.1949), a stockholder sought to restrain the exercise of conversion rights that the corporation had granted to its president. The court found the action representative and refused to require security, setting forth the test as "[w]here the corporation has no right of action by reason of the transaction complained of, the suit is representative,

---

4. *See, e. g.,* 2 G. Hornstein, Corporation Law and Practice § 602 (1959); Note, 19 Albany L.Rev. 84 (1955); Note, 29 St. John's L.Rev. 97 (1954); deCapriles & Prunty, "Survey of New York Law, Corporations," 28 N.Y.U.L.Rev. 1429 (1953); Note, 19 Brooklyn L.Rev. 312 (1953); Note, 53 Colum.L.Rev. 437 (1953); Note, 38 Corn.L.Q. 244 (1953); Note, 22 Ford.L.Rev. 97 (1953); Note 4, Syracuse L.Rev. 165 (1953).

5. In his dissenting opinion, Judge Fuld noted "[i]n a very real sense, all suits against corporations * * * involve the actions of the directors or of officers responsible to the directors" so the majority's test would do away with representative class actions altogether. 306 N.Y. at 470, 119 N.E.2d at 340.

6. *See* note 2 *supra.*

not derivative." *Id.* at 101. Similarly, actions to compel the dissolution of a corporation have been held representative, since the corporation could not possibly benefit therefrom. Fontheim v. Walker, 141 N.Y.S.2d 62 (Sup.Ct.1955); Davidson v. Rabinowitz, *supra.* Lennan v. Blakely, 80 N.Y.S.2d 288 (Sup.Ct. 1948), teaches that an action by preferred stockholders against directors is not derivative. And Lehrman v. Godchaux Sugars, Inc., *supra,* discloses that an action by a stockholder complaining that a proposed recapitalization would unfairly benefit holders of another class of stock was representative. These cases and *Lazar, supra,* are totally consistent with the postulates of the leading treatises. *See, e. g.,* 13 W. Fletcher, Private Corporation § 5915 (Rev.Vol. 1970); 3B J. Moore, Federal Practice ¶23.1.16[1] (2d ed. 1969). Professor Moore instructs that "where a shareholder sues on behalf of himself and all others similarly situated to * * * enjoin a proposed merger or consolidation * * * he is not enforcing a derivative right; he is, by an appropriate type of class suit enforcing a right common to all the shareholders which runs against the corporation."[7]

Eisenberg's position is even stronger than it would be in the ordinary merger case. In routine merger circumstances the stockholders retain a voice in the operation of the company, albeit a corporation other than their original choice. Here, however, the reorganization deprived him and other minority stockholders of any voice in the affairs of their previously existing operating company.

It is thus clear to us that *Gordon* is factually distinguishable from the instant case. Moreover, a close analysis of other New York cases, the amendment to § 626 and the major treatises, lead us to conclude that *Gordon* has lost its viability as stating a broad principle of law.

Furthermore, we view as an objective of a requirement for security for costs the prevention of strike suits and collusive settlements. Where directors are sued for mismanagement, the risk of personal monetary liability is a strong motive for bringing the suit and inducing settlement. Here, no monetary damages are sought, and no individuals will be liable.

Perhaps the strongest string in Eisenberg's bow is one he helped to fashion when he made an investment some forty years ago in Central Zone Property Corp. In 1952 that New York corporation obtained stockholder approval to transfer its assets to a new Delaware corporation in return for the new company's stock. The stock was to be held by trustees in a voting trust, and the former stockholders received voting trust certificates. Eisenberg complained that this effectively deprived him of a voice in the operation of his company which would be run in the future by the trustees of the voting trust. The Court of Appeals agreed that New York law did not permit such a reorganization. Eisenberg v. Central Zone Property Corp., 203 Misc. 59, 116 N.Y.S.2d 154, aff'd, 306 N.Y. 58, 115 N.E.2d 652 (1953). Although we have emphasized that we do not reach the merits of Eisenberg's present complaint, it is of some interest that security for costs was neither sought nor was it discussed in the *Central Zone* opinions, even though Eisenberg did not own five percent of the shares of the corporation. It was clear to all that the allegations of the complaint, quite similar in character to the instant one, stated a representative cause of action. We cannot conceive that the question of security for costs was not considered by the able counsel for the corporation or by the court, particularly since *Gordon* had been decided in the Appellate Division less than one year before the *Central Zone* decision in

---

7. Although Prof. Moore is concerned with the meaning of "derivative" in the context of F.R.Civ.P. Rule 23.1, his illustrations of state and federal cases indicate that he believes the considerations are the same in both contexts.

**272**

the Court of Appeals and extensive commentaries had already appeared.[3] We believe Eisenberg's action should not have been dismissed for failure to post security pursuant to § 627.

Reversed.