## WELCH v. ATLANTIC GULF & WEST INDIES S. S. LINES.

### Civ. A. No. 11200.

United States District Court
E. D. New York.

Nov. 23, 1951.

M. Mac Schwebel, New York City, M. Mac Schwebel, Harry Silver, New York City, of counsel, for plaintiff.

Greenman, Shea, Sandomire & Zimet, New York City, Frederick F. Greenman, Daniel M. Sandomire, and Robert H. Haines, all of New York City, of counsel, for defendant.

GALSTON, District Judge.

This is a motion by the defendant for summary judgment dismissing the complaint, under Rule 56(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A.

Summarizing the complaint, it appears that jurisdiction is based upon diversity of citizenship, plaintiff being a resident of New York and the defendant a resident of Maine. The plaintiff is the owner of 100 shares of the preferred stock of the par value of $100 of the defendant, and brings the action on behalf of himself and all other holders of the preferred stock.

The defendant was organized in November 1908. The charter of the defendant permits it to engage in the shipping business in coastwise and foreign transportation. For some time it has not engaged in that business and is alleged to be a holding company, operating through its wholly owned subsidiaries, among which are Agwi Lines, Inc. and Southern Steamship Company, and also the New York & Cuba Mail Steamship Company.

At the time of the filing of the complaint, defendant had outstanding 150,000 shares of common, and 41,617 shares of 5% preferred stock of the par value of $100 per share. The preferred and common have equal voting rights, each share having one vote. It is also alleged that the defendant's charter embraces the following provision: "The holders of the preferred stock shall be entitled to non-cumulative dividends, payable from the surplus or net profits of the corporation, at the rate of but not exceeding 5% per annum for each and every fiscal year, when and as determined and declared by the Board of Directors, in preference and priority to any payment for such fiscal year of any dividend on the common stock. If after earning, declaring and appropriating for the preferred stock a dividend of 5% for any fiscal year there shall remain any surplus or undivided net profits for such fiscal year, the Board of Directors out of such surplus or undivided net profits, may declare and pay dividends for such fiscal year upon the common. But no dividends shall in any fiscal year be paid upon the common stock out of any surplus or net profits of any previous fiscal year for which the full dividends shall not have been paid on the preferred stock."

Allegations follow relating to the purchase of securities of the defendant in December 1948 by one Jerome A. Newman, by which he acquired "power of control of Agwi". It is not necessary to repeat the details of such acquisition as set forth in paragraphs Ninth to Eighteenth inclusive. There then follow allegations that on December 16, 1948 the Board was enlarged from eight to fourteen, the six vacancies being filled by election of designees of Newman. Plaintiff alleges that defendant's preferred dividends are designated as non-cumulative, but no common dividends may in any year be paid out of surplus or net profits of any previous year for which full preferred dividends have not been paid; and it is alleged: "The amount of surplus that cannot, under this provision, be paid on dividends of common stock while any preferred shares are outstanding is calculated at approximately $6,400,000 as at July 31, 1949."

The nub of plaintiff's grievance is set forth in allegations of a scheme on the part of Newman and his associates, as directors of the defendant, to eliminate the preferred stock by devious means in order to declare

unto themselves a dividend on their common stock, including the aforesaid $6,400,000, "rightfully the property of the Agwi preferred stockholders". It is asserted that because of the actions of the directors, preferred stockholders have been deprived of dividend arrears of $6,400,000. Hence the plaintiff seeks a decree to determine the rights of the preferred stock and to receive the payment of all dividends for prior years in which the earnings of the defendant and its surplus were sufficient to pay the same.

■ I have read the complaint several times, but I find no allegation reciting in which years, if any, the 5% preferred stock dividend has not been paid. It would seem to me that such an allegation was essential to the plaintiff's rights. Nor is it understandable why his full contract with the defendant, as evidenced by his holding of preferred stock, is not set forth. (They are, however, recited in full in an opposing affidavit, hereinafter referred to.) In the absence of a showing that dividends for specific years were withheld, fraudulently or capriciously or in the exercise of unsound judgment, it is impossible to conclude that the plaintiff is entitled to $6,400,000 for himself and others of his class. In passing it may be noted that plaintiff did not become a registered owner until May 18, 1949.

The answer contains a denial of all material allegations of the complaint. It also alleges that at the time of incorporation of the defendant, in 1908, 149,964 shares of preferred stock were issued and outstanding, and that early in its history the defendant adopted the policy of reducing its preferred stock by purchasing it for retirement, so that as a result there have been retired, or are held for retirement, an aggregate of 117,852 shares, and as at December 31, 1950 there were outstanding and held by stockholders but 32,112 shares of the preferred stock. It is explained that the aforesaid sum of $6,400,000 does not constitute a fund out of which dividends can be paid to the holders of preferred stock.

As a separate defense the answer alleges that since the issuance of the preferred stock in 1908, a full dividend of $5 a share was declared and paid for eighteen years, a dividend of $3 a share for one year, and a dividend of $2 a share for one year; and that in each year for which the full dividend was not paid, the surplus or net profits of such year were in the sound business judgment of the board of directors required for corporate purposes; that no dividends have at any time been paid upon the common stock out of any surplus or net profits of any year for which the full dividend had not been paid on the preferred stock; all of which was made public and reported currently to the stockholders of Agwi; to the New York Stock Exchange since 1916, when the preferred stock was listed on such Exchange, and to the Securities and Exchange Commission in each year since 1935, when the preferred stock was registered under the Securities Exchange Act of 1934; so that it is alleged that when the plaintiff, on or about May 18, 1949, elected to acquire his 100 shares of Agwi preferred stock he became estopped to deny the propriety, reasonableness or legality of the non-payment of dividends sought in this action.

The third defense alleges that holders of the preferred stock from 1941 to 1950 inclusive, and for various years prior to that period, received a full dividend of $5 per share; and that the plaintiff is barred by laches from maintaining this action. A defense of the statute of limitations is set up as a bar to any right of action, if any, which existed more than six or ten years prior to the commencement of this action.

Defendant's motion for summary judgment is supported by affidavits of A. G. Plett, Vice President, Secretary and Treasurer and a director of the defendant; E. A. Bollong, one of the defendant's auditors; Robert G. Stone, a director of defendant since 1927, and a substantial stockholder; Jerome A. Newman, President and a director of the defendant; Frederick F. Greenman and Daniel M. Sandomire, members of the law firm of defendant's attorneys. Affidavits in opposition are submitted by M. Mac Schwebel, plaintiff's attorney, Jack Taub, an accountant, and Sanford L. Fogg, a Maine attorney. Defendant filed also reply affidavits by Plett, Stewart, one of defendant's auditors, Graham, a director and member of the executive committee of

260

the defendant, and by Greenman. The court has before it also the filed testimony of the plaintiff upon examination before trial, taken by the defendant, and depositions of Newman, Stone and Edgar S. Bloom, taken by plaintiff before trial. Also filed are affidavits of Schwebel, verified November 21, 1951, and of Greenman, verified November 20, 1951, and continuation and completion of deposition of Newman, taken November 19, 1951.

In the affidavit of Plett there is set forth the text appearing on the face of the certificates of stock in question: "This Is To Certify that        is the owner of One Hundred full-paid and non-assessable shares of the par value of One Hundred Dollars each of the preferred capital stock of the Atlantic Gulf and West Indies Steamship Lines, transferable by the holder hereof in person or by duly authorized attorney upon surrender of this certificate properly endorsed. The holders of the preferred stock shall be entitled to non-cumulative dividends, payable from the surplus or net profits of the corporation, at the rate of but not exceeding five per centum (5%) per annum for each and every fiscal year, when and as determined and declared by the Board of Directors, in preference and priority to any payment for such fiscal year of any dividend on the common stock. If after earning, declaring and appropriating for the preferred stock a dividend of five per cent. (5%) for any fiscal year there shall remain any surplus or undivided net profits for such fiscal year, the Board of Directors out of such surplus or undivided net profits may declare and pay dividends for such fiscal year upon the common stock. But no dividends shall in any fiscal year be paid upon the common stock out of any surplus or net profits of any previous fiscal year for which the full dividends shall not have been paid on the preferred stock. The preferred stock or any portion thereof may, from time to time, be purchased by the corporation at its option, upon the payment in cash of one hundred dollars ($100) per share to the holder or holders of the preferred stock so to be purchased, ten days' notice of such proposed purchase having been given. Preferred stock so purchased shall be held in the Treasury of the corporation and no dividend shall be paid thereon until and unless the Board of Directors by the vote of a majority shall authorize the sale of the same and the payments of dividends thereon; it being the intention that such purchase shall not be construed as a reduction of the capital stock of this corporation. In the event of any liquidation, dissolution or winding-up, whether voluntary or involuntary, of the corporation, the holders of the preferred stock shall be entitled to be paid in full the par value of their shares before any amount shall be paid to the holders of common stock, and after such payment to the holders of the preferred stock of its par value the remaining assets and funds shall be divided and paid to the holders of the common stock. Each share of stock is entitled to one vote. This certificate is subject to all the terms, conditions and limitations of the Certificate of Incorporation, and all amendments thereto and supplements thereof, (copies on file with Transfer Agent) to which reference is hereby made, with the same effect as if they were herein fully set forth. This certificate is not valid until countersigned by the Transfer Agent and registered by the Registrar."

■ Though the papers are voluminous, the critical issue in this action can well be narrowed to the issue of what the rights of a holder of preferred shares of this defendant company are. Certainly he acquired no rights greater than that explicit or necessarily implicit in the terms of the certificate which he holds. As is pungently stated by Judge Frank in Guttmann v. Illinois Central R. Co., 2 Cir., 189 F.2d 927, affirming, D.C., 91 F.Supp. 285; certiorari denied, Nov. 5, 1951, 72 S.Ct. 107, it is that contract which governs. There is nothing in the complaint or in plaintiff's examination of officers or directors of the defendant, or in his opposing affidavits, which can stretch those rights one iota. Holders of the preferred stock were entitled to a 5% dividend if earned, and if the sound judgment of the board of directors warranted its declaration and payment. There can be no dispute over the fact that the full $5 per share dividend was paid on the preferred

stock in each year from 1941 through 1950 inclusive, and indeed that payment at the 5% rate has been continued during 1951, a dividend of $2.50 having been declared and paid in July of this year.

■ Certainly the restriction in the charter in respect to the payment of dividends on the common stock cannot be construed as an obligation to pay the preferred shareholders, in addition to the full dividends that they have received during the last ten years, a bookkeeping item of $6,400,-000.

Under the foregoing analysis of the critical issue of the case, it becomes unnecessary to pass on the other defenses that have been raised by the defendant. However, if any equities existed they are certainly in favor of the corporation as against the claim asserted by the plaintiff. The weakness of the plaintiff's position in respect to this claim for $6,400,000 is further illustrated by the right of the corporation to redeem the preferred stock by paying the holders $100 per share on ten days' notice of its intention to redeem such stock.

■ Since the preferred shares are non-cumulative, preferred shareholders cannot go back to prior years and assert rights to undeclared dividends. So much was said in Guttmann v. Illinois Central R. Co., supra, and since the authorities are therein reviewed with great care by both the Court of Appeals and the District Court, nothing would be gained by repetition here.

Basically there are no facts at issue, and the issue of law must be resolved in favor of the defendant, for the rights of the so-called preferred stockholders, as has been said, are defined by the terms of the certificate. The charter provisions do not enlarge those considerations.

■ The allegations of bad faith since Newman obtained control in 1948 are no proof of misconduct or bad judgment or capricious action on the part of the directors for any of the antecedent years. The complaint makes no allegations of bad faith during any of the years antedating the alleged Newman control in 1948.

■ Since the full dividend of $5 per share has been paid on the preferred stock in each year from 1941 through 1950 inclusive, under the doctrine enunciated in Wabash Ry. v. Barclay, 280 U.S. 197, 50 S.Ct. 106, 74 L.Ed. 368, and Guttmann v. Illinois Central R. Co., supra, the holders of the preferred stock cannot go back to claim any alleged arrears for those years.

Or to state it in other words, the plaintiff has had everything he is entitled to have in the way of dividends. How any misconduct or capricious judgment by the directors in 1948 could attach to the failure to declare dividends in 1940 and prior thereto is difficult to see. There is no allegation of fraud on the part of the directors of those years, or of bad business judgment. Certainly if the present directors are misconducting the affairs of the company, stockholders would have their proper legal remedy for removal of such directors. Perhaps the plaintiff could establish such a form of action. But that is not the issue before this court, nor is this action one of that nature.

The motion for summary judgment is granted. Settle order.

In reaching this decision I have well in mind the admonition of Judge Learned Hand in Bozant v. Bank of New York, 2 Cir., 156 F.2d 787. The conclusion reached here is in no sense based on an "effort to save time by an attempt to dispose of a complicated state of facts on motion for summary judgment". Whatever there is in the way of complicated statements of facts has no bearing on the pivotal issue raised by the pleadings in this case.