Ada Gordon, on Behalf of Herself and All Other Stockholders of Hotel Barbizon, Inc., Appellant, *v.* Lawrence B. Elliman et al., Defendants, and Hotel Barbizon, Inc., Respondent.

Argued November 19, 1953; decided April 8, 1954.

*Aaron Schwartz* and *Mortimer A. Shapiro* for appellant. The instant action to compel the declaration and payment of a dividend is not an action brought in the " right " of the corporation within the intent and meaning of section 61-b of the General Corporation Law. (*Price* v. *Gurney,* 324 U. S. 100; *Clarke* v. *Greenberg,* 296 N. Y. 146; *Fontheim* v. *Walker,* 282 App. Div. 373; *Schreiber* v. *Butte Copper & Zinc Co.,* 98 F. Supp. 106; *Horwitz* v. *Balaban,* 112 F. Supp. 99; *Swinton* v. *Bush & Co.,* 199 Misc. 321, 278 App. Div. 754; *Stevens* v. *United States Steel Corp.,* 68 N. J. Eq. 373; *Giesecke* v. *Denver Tramway Corp.,* 81 F. Supp. 957; *Goldstein* v. *Lightner,* 266 App. Div. 357, 292 N. Y. 670; *City Bank Farmers Trust Co.* v. *Hewitt Realty Corp.,* 257 N. Y. 62; *Boardman* v. *Lake Shore & Michigan Southern Ry. Co.,* 84 N. Y. 157; *Witherbee* v. *Bowles,* 201 N. Y. 427; *Von Au* v. *Magenheimer,* 126 App. Div. 257, 196 N. Y. 510; *Hiscock* v. *Lacy,* 9 Misc. 578.)

*Sidney G. Kingsley* for respondent. A stockholder's action to control the discretion of the board of directors of a corporation by compelling the declaration of dividends is wholly derivative and is maintained in the right of the corporation within the meaning of section 61-b of the General Corporation Law. (*Flynn* v. *Brooklyn City R. R. Co.*, 158 N. Y. 493; *Kavanaugh* v. *Commonwealth Trust Co.*, 181 N. Y. 121; *Witherbee* v. *Bowles*, 201 N. Y. 427; *Rothbart* v. *Star Wet Wash Laundry Co.*, 185 App. Div. 807; *Lydia E. Pinkham Medicine Co.* v. *Gove*, 303 Mass. 1; *Laurel Springs Land Co.* v. *Fougeray*, 50 N. J. Eq. 756; *Von Au* v. *Magenheimer*, 126 App. Div. 257, 196 N. Y. 510; *Jones* v. *Van Heusen Charles Co.*, 230 App. Div. 694; *Hiscock* v. *Lacy*, 9 Misc. 578; *Kranich* v. *Bach*, 209 App. Div. 52; *Davidoff* v. *Seidenberg*, 275 App. Div. 784; *Reid* v. *Long Is. Bond & Mtge. Guar. Co.*, 198 Misc. 460, 277 App. Div. 888; *NY PA NJ Utilities Co.* v. *Public Service Comm.*, 23 F. Supp. 313; *Lapchak* v. *Baker*, 298 N. Y. 89; *Cohen* v. *Beneficial Loan Corp.*, 337 U. S. 541.)

Van Voorhis, J. This appeal is from an order of the Appellate Division affirming a Special Term order granting a stay of proceedings in the action pending the furnishing of security pursuant to section 61-b of the General Corporation Law. In granting leave to appeal, the Appellate Division certified the following questions:

" 1. Is an action by a stockholder against the corporation and its directors to compel the declaration of a dividend upon all of the outstanding stock an action brought in the ' right ' of the corporation within the intent and meaning of Section 61 (b) of the General Corporation Law authorizing the Court to require the plaintiff to give security for the expenses which may be incurred by the corporation in the action?

" 2. Was the order of Special Term, appealed from herein, properly made? "

The constitutionality of this section of the General Corporation Law has been upheld in *Lapchak* v. *Baker* (298 N. Y. 89) where it was held that the courts must assume that the Legislature inquired and found (1) justification for making special provision in respect of derivative suits brought by holders of relatively small amounts of the corporation's stock, and (2) occasion for requiring plaintiffs in such suits to give reasonable

security for litigation expenses of defendants therein. The section applies to actions " instituted or maintained in the right of any foreign or domestic corporation by the holder or holders of less than five per centum of the outstanding shares ". The question here is whether an action by a stockholder on behalf of herself and all other stockholders, to compel the declaration of a dividend, is one brought in the right of the corporation under this statute adopted in 1944.

The test of whether an action to compel declaration of dividends is maintained in the interest of the corporation, is whether the object of the lawsuit is to recover upon a chose in action belonging directly to the stockholders, or whether it is to compel the performance of corporate acts which good faith requires the directors to take in order to perform a duty which they owe to the corporation, and through it, to its stockholders. To state the problem in this manner is, in effect, to answer it. When a dividend has lawfully been declared, the relation of debtor and creditor is created between the corporation and each stockholder for his proportion of the dividend. If the corporation refuses to pay, each stockholder may recover it in his own right in an action against the corporation (*Godley* v. *Crandall & Godley Co.,* 212 N. Y. 121, 127–128; *Matter of Booth,* 139 Misc. 253).

Unless a dividend has been declared, upon the other hand, no portion of the assets of the corporation has been set aside for stockholders, and no right of action inheres in them to be paid any part of the corporation's funds. It is well settled that " whether or not dividends shall be paid, and the amount of the dividend at any time, is primarily to be determined by the directors, and there must be bad faith or a clear abuse of discretion on their part to justify a court of equity in interfering; accordingly, unless fraud, bad faith or dishonesty on the part of directors can be shown, their judgment in withholding a dividend from the stockholders will be regarded as conclusive " (11 Fletcher's Cyclopedia Corporations [Perm. ed.], § 5325). The New York cases amply sustain the necessity to establish bad faith on the directors' part (*City Bank Farmers Trust Co.* v. *Hewitt Realty Co.,* 257 N. Y. 62). In *Liebman* v. *Auto Strop Co.* (241 N. Y. 427, 433) it was stated: " The statute confers

upon the directors this power, and the minority stockholders are not in a position to question this right, so long as the directors are acting in good faith. This is the test and the fixed standard (*Kavanaugh* v. *Kavanaugh Knitting Co.*, 226 N. Y. 185) ''.

Unlike an action at law by stockholders to recover dividends that have been declared, a suit in equity to compel the declaration of dividends is in theory against recalcitrant directors to cause them to perform their duty as officials of the corporation. It has even been held in some cases that directors are indispensable parties (*Jones* v. *Van Heusen Charles Co.*, 230 App. Div. 694; *Schuckman* v. *Rubenstein*, 164 F. 2d 952). The idea was succinctly expressed by Coxe, District Judge in *NY PA NJ Utilities Co.* v. *Public Service Comm.* (23 F. Supp. 313, 314): '' The power to declare dividends resides in the directors; and their discretion in that respect will not be interfered with by a court of equity except for manifest abuse, City Bank Farmers' Trust Co. v. Hewitt, 257 N. Y. 62, 177 N. E. 309, 76 A. L. R. 881; Staats v. Biograph Co., 2 Cir., 236 F. 454, L. R. A. 1917B, 728; and the ordinary suit to have dividends declared is against the directors themselves for misconduct, Jones v. Van Heusen Charles Co., 230 App. Div. 694, 246 N. Y. S. 204; Hiscock v. Lacy, 9 Misc. 578, 30 N. Y. S. 860; Dodge v. Ford Motor Co., 204 Mich. 459, 170 N. W. 668, 3 A. L. R. 413.''

In the leading case of *Hiscock* v. *Lacy* (9 Misc. 578) Judge IRVING G. VANN, later of this court, then sitting as a Supreme Court Justice at the Onondaga Special Term, directed the paymet of dividends on this theory. He quoted sections 545 of Cook and 448 *et seq.* of Morawitz on Corporations to indicate the equitable nature of the jurisdiction, and said (pp. 593–594): '' Primarily the corporation has the right, as a beneficiary of an implied trust, to call the directors to account, but as this is not practicable while the same persons continue directors, the stockholders may commence the action in their own names on making the corporation a party defendant.''

The analogies which he draws with other kinds of stockholders' suits, leave no doubt that in Judge VANN's mind an action to compel the declaration of dividends is brought in behalf of the corporation, as in the case of actions against directors for waste

or misappropriation of corporate assets. Redress is sought, not in the individual right of the minority stockholders, but through the corporation. The annotation (55 A. L. R. 8, 142) contains an instructive discussion, with citation of many cases upon this point entitled: *" Duty first to exhaust remedies within corporation "*. The annotator said (p. 142, par. [b]): " Ordinarily, a minority stockholder, in order to maintain a suit to compel the declaration of a dividend, must show that he made proper efforts to obtain redress within the corporation by seasonable request of the stockholders or directors that a dividend should be declared, and that such request was unreasonably and wrongfully refused, or he must show reasonable excuse for failure to make such effort to obtain relief through the corporation." Cited in support of this principle are *Winstead* v. *Hearne Bros. & Co.* (173 N. C. 606); *Maeder* v. *Buffalo Bill's Wild West Co.* (132 F. 280); *Wilson* v. *American Ice Co.* (206 F. 736); *Bickel* v. *Henry Bickel Co.* (184 Ky. 582); *Spear* v. *Rockland–Rockport Lime Co.* (113 Me. 285, 6 A. L. R. 793); *Dunphy* v. *Traveler Newspaper Assn.* (146 Mass. 495); *De La Croix* v. *L. Eid Concrete Steel Co.* (8 Ohio Nisi Prius [N. S.] 489). These cases hold that a demand upon a corporation to sue the directors, or proof that such a demand would be futile, is a condition precedent to the maintenance of an action to compel declaration of dividends, and no authorities are cited to the contrary. The decisions denying motions to dismiss complaints in such actions, where a majority of the directors could not be served with the summons in any jurisdiction, are later discussed. They are decided on the theory that directors who are charged with bad faith, in such a matter, should not be allowed to continue to mismanage the corporation, to the detriment of stockholders, merely by residing or keeping themselves where they are not amenable to process. Those decisions do not alter the theory or nature of the cause of action.

The idea is too restricted that derivative actions are limited to such as are brought to compel the directors to pay or restore money to the corporation. A number of specific situations instanced in Judge VANN's opinion in *Hiscock* v. *Lacy* (*supra*) concern other duties to be performed by the directors. In general, it may be said that an action is in the right of the corpora-

tion which invokes the equitable powers of the Supreme Court to direct the management of its affairs. This power is exercised with restraint, but, when it is brought to bear, the object is for the court to chart the course for the corporation which the directors should have selected, and which it is presumed that they would have chosen if they had not been actuated by fraud or bad faith. Due to their misconduct, the court substitutes its judgment *ad hoc* for that of the directors in the conduct of its business. That applies to the establishment of a suitable dividend policy for the corporation, as much as to anything else. A stockholder has no individual cause of action to recover dividends that have not been declared. All that he can do is to sue in equity to cause the court to perform a corporate function which the directors would have done except for their bad faith.

The situation in this respect is different from that where a contract is involved obligating the corporation to pay dividends periodically at a specified rate. *Boardman* v. *Lake Shore & Michigan Southern Ry. Co.* (84 N. Y. 157) and *Koppel* v. *Middle States Petroleum Corp.* (272 App. Div. 790) were such cases. In the *Boardman* case it was said (pp. 173–174): "By the certificate alone the intestate was entitled to dividends at the rate of ten per cent per annum, payable semi-annually out of the net earnings of the company, *and it is agreed by the guaranty that these dividends shall be paid as provided*. The contract is explicit as to the amount and the source out of which the dividends shall be paid, and the times when payable annually are also designated. * * * The reasonable and fair interpretation of the contract is, that the dividends were not only to be preferred, but, *being guaranteed,* were cumulative and a specific charge upon the accruing profits, to be paid as arrears, before any other dividends were divided upon the common stock." (Italics supplied.)

The distinction is not between preferred and common stock; it is that punctual payment of the *Boardman* preferred dividends was guaranteed, and that they could not have been passed if earned without violating the express promise of the corporation to pay them. They were akin to income bonds. In other words, where such dividends have been earned, they are required to be appropriated under the contract with the shareholder to

the payment of dividends of this character, and, without any exercise of discretion on the part of the directors, the individual rights of each shareholder become the same as they are in the ordinary instance after a dividend has been declared by the directors (*Godley* v. *Godley & Crandall Co.,* 212 N. Y. 121, *supra; Matter of Booth,* 139 Misc. 253, *supra*). The fallacy, as it seems to us, in the reasoning (e.g., 28 N. Y. U. L. Rev. 1429–1431; 28 St. John's L. Rev. 360–368) that an action such as the present is not derivative in character, consists in refusal to recognize the distinction between a case where the stockholders are vested individually with a matured right to recover against the corporation a dividend specified in amount and guaranteed to be paid by contract, as in the case of the holder of a fixed interest bearing obligation, and a situation like the present, where the stockholder possesses no individual right to recover as a creditor, and where whatever cause of action he possesses is common to all of the stockholders and depends upon the intervention of the court through the exercise of its equitable powers to direct the affairs of a corporation to the extent that they have miscarried due to misconduct by the directors. The question whether such an action can be maintained without joining all of the directors as indispensable rather than as conditionally necessary parties, is different from whether the equitable power of the Supreme Court over the affairs of the corporation can be exerted except in the right of the corporation.

These two situations should be kept distinctly and separately in mind. It is only by obliterating this distinction that the cases of *Swinton* v. *Bush & Co.* (199 Misc. 321, affd. 278 App. Div. 754); *Kroese* v. *General Steel Castings Corp.* (179 F. 2d 760), and *Stevens* v. *United States Steel Corp.* (68 N. J. Eq. 373) could be cited in support of appellant's position. It is true that at Special Term in *Swinton* v. *Bush & Co. (supra),* a motion by defendant was denied for an order requiring plaintiffs to give security for defendant's expenses under section 61-b of the General Corporation Law, as well as to bring in a majority of defendant's directors as parties defendant. On appeal to the Appellate Division, only the second question was presented, and the motion was denied for the reason that the residences of the directors were so scattered that it was impos-

sible to join a majority of them in any forum. Holding them to be conditionally necessary rather than indispensable parties (cf. Civ. Prac. Act, § 193) did not change the theory of the action, but followed a conclusion made by Judge LEARNED HAND in *Roos* v. *Texas Co.* (23 F. 2d 171, 172) that the question of indispensable parties is " entirely practical * * * dependent in each case upon the facts."

The *Kroese* and *Stevens* cases, like the *Swinton* case at the Appellate Division, involved situations where the action was likely to be defeated if it were necessary to bring in a majority of the directors, due to their diversity of residence. What is said in the opinions in those cases about the theory of the action, particularly in the *Stevens* case, was not necessary to the decision. In the *Kroese* case the opinion by Judge GOODRICH for the United States Court of Appeals in the Third Circuit proceeds on the practical basis, saying that " It would be most unjust if he [the stockholder plaintiff] could not prove the claim for lack of a proper forum " (pp. 765–766). The opinion further states that " when it appears that the persons who are charged with management according to their business judgment are not exercising their judgment, but are profiting from participation in the enterprise at the expense of others, then courts do interfere to protect the participants to whom this wrong is being done * * *. In such a case, even though individual directors are joined as parties, they are not called upon to exercise any business direction. The case has passed that point." (P. 763.) After saying that the judgment of the court is substituted for the honest judgment of the directors, for the reason that the latter is not obtainable, Judge GOODRICH points out that it is not necessary to have a formal meeting of the board of directors to carry out the mandate of the court, inasmuch as its decree is substituted for a resolution of the board. " It follows," the Third Circuit concluded, " that directors are not indispensable parties to a lawsuit by a defrauded shareholder to recover dividends in a proper case." (P. 764.) That is substantially what appears to have been decided by the Appellate Division in *Swinton* v. *Bush & Co.* (278 App. Div. 754, *supra*) and is not, in our view, determinative of whether an action to compel the declaration of dividends is brought in

the right of the corporation. Joinder of the directors was omitted for practical reasons, but the theory of decision was that the court acted in their place and stead, due to their disqualification as a result of bad faith, and took the corporate action which it was held that the directors would have taken if they had not been thus actuated.

It is an oversimplification to treat such an action as this as being by individual stockholders against the corporation to enforce a contract right. This assumption is based on the idea that there is an adversity of interest between the several stockholders and the corporation, that it is in the interest of the corporation to defeat such a cause of action and thereby leave more assets in the corporate treasury, that calling the directors to account for fraud or bad faith in such a matter is a superficial formality and no longer essential as an ingredient in the cause of action, that equitable intervention by the court in the management of the corporate affairs is in such case an outworn legal fiction, to cloak what is actually an action at law by individual stockholders to recover their portions of the corporation's earnings as a contractual right, and that the classification of such a cause of action with causes of action justifying the intervention of a court of equity on account of violation of trust duties by directors is unreal and should be abandoned. Until now, that has been held to be the basis for entertaining actions to compel the declaration of dividends. (Cf. par. 486, under § 27 of the General Corporation Law, in 1 White on New York Corporations [12th ed.], in which the basis for equitable intervention in corporate affairs is discussed, citing cases such as *Kavanaugh* v. *Kavanaugh Knitting Co.*, 226 N. Y. 185, *supra*; *Sage* v. *Culver*, 147 N. Y. 241; *Pollitz* v. *Wabash R. R. Co.*, 207 N. Y. 113.)

Nor is it correct to assume that the interest of the corporation is not involved except adversely to that of the stockholder, nor that possible personal liability on the part of directors is excluded. By what is said in this opinion, it is intended to cast no reflection upon the directors of the respondent corporation herein. It may well be that they are innocent of the charges made against them in this complaint. What is said concerning this subject is merely in order to discuss the general question

of law. In the usual case where declaration of dividends is compelled, directors are not mere bystanders. They have usually sought to monopolize the earnings of the corporation by excessive salaries or collusive agreements, or to manipulate the value of minority stockholdings in order to freeze them out. Such was the case in *Von Au* v. *Magenheimer* (126 App. Div. 257, affd. 196 N. Y. 510), where recovery of damages was upheld against directors who had depressed the stock of the corporation by arbitrarily refusing to declare dividends, in consequence whereof plaintiff sold her testator's stock for a great deal less than it was worth. This was held to be an actionable wrong, for which she was entitled to recover. In that instance, the stock had been sold, so that the damage would not have been repaired by the declaration of suitable dividends. In arriving at the result, however, the opinion per NATHAN L. MILLER, J., bases the right to recover on the circumstance that, if the plaintiff's shares had not been disposed of, an action could have been maintained "through the corporation by a suit in equity to compel proper action ' by the payment of dividends, the remedy being characterized as by a representative action ' on behalf of the corporation " (p. 263). Such a cause of action is grouped with other wrongs to the corporation by directors, and the fraudulent refusal to declare dividends is characterized throughout the opinion as a wrong to the corporation. As in the case of other wrongs, it is pointed out: " A stockholder cannot maintain a personal action for a wrong to the corporation merely because the indirect result is a diminution in the value of his shares (*Niles* v. *N. Y. C. & H. R. R. R. Co.,* 176 N. Y. 119). Had the conspiracy in this case been unsuccessful [i.e. if plaintiff had not sold her shares] there would have been no direct injury personal to the plaintiff, and she might have succeeded by appropriate action in restraining the payment of the increased salaries and in compelling a proper distribution of earnings ". (P. 263.)

The idea that the corporation itself has no interest in such a question except to defeat the claims of the stockholders to additional dividends, does not accord with the facts. A corporation has an interest of its own in being well managed. In this connection, it is significant that in *City Bank Farmers*

*Trust Co.* v. *Hewitt Realty Co.* (257 N. Y. 62, 66, *supra*) Judge Pound, speaking for a unanimous court, said that to succeed in an action to compel directors to declare dividends, a stockholder " must establish as matter of law that the action of the directors on this record was *inimical to the welfare of the corporation* and all its stockholders " (italics supplied) citing *Kavanaugh* v. *Kavanaugh Knitting Co.* (226 N. Y. 185, *supra*) and Lindgrove v. *Schluter & Co.* (256 N. Y. 439). As was pointed out in the opinion by Presiding Justice Peck at the Appellate Division, it is in the interest of a corporation to have a sensible dividend policy which is necessary to enable it to raise new capital when needed by selling its stock. Moreover, as was also mentioned by the Appellate Division, the complaint itself alleged that this corporation has accumulated a surplus which is creating the " real hazard actually present that * * * [Barbizon] may be cast in a heavy liability under section 102 of the Internal Revenue Code ". (280 App. Div. 659.) Inability to obtain corporate financing or being penalized under section 102 of the Internal Revenue Code are two respects, at least, which involve primarily the property and business of the corporation itself.

Equitable intervention by the court, in such cases, is not a cloak to cover what is in reality an action at law by the stockholders. This kind of action differs only from other instances of court intervention in that the immediate result is to bring about some distribution of corporate earnings to the stockholders. In other cases of intervention by the courts, the object is likewise to benefit stockholders or creditors through the corporation where the directors have been in some other manner deficient in performing their responsibility. The equitable intervention of the court in this situation, means that the court has to consider the interest of the corporation from every angle, including but not limited to its earnings, surplus, current and fixed assets and liabilities, the nature of the business and probable fluctuations in earnings and demands for new capital, competitive conditions in the industry, and so forth. These factors have to be weighed in the light of the circumstance that the stockholders are presumed to have invested their money with the expectation that they would receive a suitable return if the business prospers, and whether

the directors have acted for ulterior purposes has to be considered in the light of all of these circumstances. Such a cause of action, calling upon the court to intervene in directing the affairs of the corporation due to default by the directors, is one where the court is required to act in the right of the corporation, as that phrase is used in section 61-b of the General Corporation Law.

Actions to compel payment of dividends have been described as " derivative " in opinions in courts of this State (*Davidoff* v. *Seidenberg*, 275 App. Div. 784; *Reid* v. *Long Is. Bond & Mtge. Guar. Co.*, 198 Misc. 460, affd. 277 App. Div. 888; *Jones* v. *Van Heusen Charles Co.*, 230 App. Div. 694, *supra*). The leading cases of *Lydia E. Pinkham Medicine Co.* v. *Gove* (303 Mass. 1) and *Laurel Springs Land Co.* v. *Fougeray* (50 N. J. Eq. 756) adopt that rationale. " Such an action," says Fletcher, " is maintained by a stockholder, but in the right of the corporation, making it a party defendant " (11 Fletcher's Cyclopedia Corporations [Perm. ed.], § 5326, pp. 816–817). The textwriters and the decided cases are not unanimous (contra, cf. Ballantine on Corporations [Rev. ed., 1946], § 234, p. 556; 3 Moore on Federal Practice [2d ed.], par. 23.16, pp. 3508–3509; *Stevens* v. *United States Steel Corp.*, 68 N. J. Eq. 373, 375–376, *supra*), but a majority adhere to the view that the action is derivative. Whether the directors are indispensable parties if they cannot be served in one forum is the related but different issue which has generally been presented (e.g., 38 Geo. L. J. 664; 21 U. of Cin. L. Rev. 172; 26 Ind. L. J. 79; 61 Harv. L. Rev. 1253), and since the corporation pays the dividends without contribution by the directors (at least in the first instance), it has been pointed out that there is no practical reason why unavailability of the directors should preclude relief. Such a holding, based on practical considerations, does not alter the nature of the action. Directors who are not parties are not bound by the judgment, although their interest, including sometimes their ultimate liability, may be indirectly affected, since the outcome depends upon an adjudication of their fraud or bad faith. If failure to serve them does not defeat the action, they may apply to be joined in order to protect their interests since their conduct is at stake.

A further word may be in order concerning the policy of section 61-b of the General Corporation Law as described in *Lapchak* v. *Baker* (298 N. Y. 89, *supra*). It is not clear that secret settlements with directors was the only evil designed to be prevented by the enactment of that section. However, there is no reason to believe that the practice of buying off claims of this nature would be abandoned merely for the reason that personal claims are not presently being asserted against directors. As has been pointed out, in certain situations the personal interest of directors in such litigation may not be negligible, and, as they are ordinarily the representatives if not the owners of controlling shares, and are usually charged with conspiring to oppress the minority in this variety of litigation, they are likely to be actively interested in the result. The policy of this statute is for the Legislature to determine. It was drawn so as to apply to actions instituted in the right of the corporation, which is the type of action that the present suit is held to be.

The order appealed from should be affirmed, with costs; the questions certified are answered in the affirmative.

Fuld, J. (dissenting). Section 61-b of the General Corporation Law does not, in terms or in spirit, require the posting of security in every action by stockholders that challenges the conduct of directors. Concededly, it lays its burden only upon actions instituted by a shareholder '' in the right '' of his corporation, and yet the court is now reading into the statute a test which shifts the ground of dispute from the question of whose right is involved to that of whose conduct is attacked.

Section 61-b manifestly does not apply to actions brought by a stockholder to vindicate his personal right. Here it is alleged that the corporation has failed or refused to declare and pay dividends to which its stockholders are entitled. To me, those words plainly charge that the corporation has committed a wrong against the stockholders and, since the action is brought to redress only that wrong, it does not depend upon assertion of the right of the corporation to faithful performance of directoral duties. The plaintiff is entitled to seek — and here is seeking — specific performance of the corporation's obliga-

tion to pay dividends upon his investment. The action is, in short, brought against the corporation as a legal entity and, if successful, will require the corporation to part with some of its assets in favor of its stockholders. I am, therefore, unable to follow the legal alchemy by which a breach of duty by the corporation — a corporate wrong — is transmuted into a corporate right.

The nub of this appeal is to divine the meaning of the statutory phrase "in the right" of the corporation. In its search for that meaning, the court has adopted an elaborate test: "whether an action to compel declaration of dividends is maintained in the interest of the corporation," the opinion reads (p. 459), turns upon whether the object of the action is to recover upon a chose in action belonging to the stockholders or whether "it is to compel the performance of corporate acts which good faith requires the directors to take in order to perform a duty which they owe to the corporation, and, through it, to its stockholders."

The vice of the test is that it presupposes that every duty owed by corporate directors runs exclusively to the corporation as such and never directly to the stockholders in their personal and individual right. The law is otherwise. This court has recognized a "relation of the directors to the stockholders" and has defined it as "essentially that of trustee and *cestui que trust*" (*Kavanaugh* v. *Kavanaugh Knitting Co.*, 226 N. Y. 185, 193), and Judge VANN, when sitting on the Supreme Court, noted that the courts frequently compel directors to perform "acts required by good faith *to stock holders.*" (*Hiscock* v. *Lacy*, 9 Misc. 578, 593–594; italics supplied.)[1]

In a very real sense, all suits against corporations — which must of necessity act through directors and officers — involve the action of the directors or of officers responsible to the directors. An indictment under the antitrust laws or a suit based

---

1. For example, in a proper case, stockholders may obtain direct redress for the directors' refusal to permit them to inspect the corporation's books or to vote or to have their stock transferred or to assert pre-emptive rights or to avoid a wrongful increase of stock issued to others which results in impairing their relative positions within the capital structure. (See, e.g., *Witherbee* v. *Bowles,* 201 N. Y. 427; *Horwitz* v. *Balaban,* 112 F. Supp. 99.)

upon failure to accept goods contracted for may challenge the conduct of directors, since it is their management which has resulted in the acts about which complaint is made. Rights of the government or of a supplier of merchandise, however, are certainly not to be defeated by a showing that the action or inaction on the part of the directors may also constitute a breach of their fiduciary duty to the corporation. In short, it simply is not the law that an attack on directors' conduct is, *ipso facto,* the assertion of a corporate right of action. The mere fact that the power to declare dividends resides in the directors and that a suit to compel a dividend payment challenges directors' action has no bearing on the question of whose right is involved in such a suit. We must seek elsewhere to ascertain the manner of the '' right '' that a court enforces when it overrules the decision of corporate directors and commands the corporation to pay dividends.

Time may have dimmed Chief Justice MARSHALL's pronouncement that a corporate charter is a contract with the state (see *Dartmouth Coll.* v. *Woodward,* 4 Wheat. [U. S.] 518), but it has never been doubted that it represents a contract among the shareholders and between them and the corporation. Some of the terms of the contract are expressed, others are implied, but those implied are no less important and enforcible. For instance, early charters were entirely silent on the pre-emptive right of stockholders to subscribe to new issues, but the right was implied as long ago as 1807 in *Gray* v. *Portland Bank* (3 Mass. 364), and we have held that a suit to vindicate this right, far from being one '' in the right '' of the corporation, is personal to the stockholder (see *Witherbee* v. *Bowles, supra,* 201 N. Y. 427) and a federal court has ruled that such an action is not within the scope of section 61-b of our General Corporation Law. (See *Horowitz* v. *Balaban, supra,* 112 F. Supp. 99.) Other examples are at hand. (See Stevens on Corporations [2d ed., 1949], pp. 785–786.)

I can conceive of no more important or generally understood right of the stockholder in a modern corporation, where he is primarily an investor, than that of receiving dividends upon his investment. It is customary to delimit this right by express

contractual language in the case of preferred stock, but the right is clearly implied in the case of common stock as well, even though the measure may be different or less certain. In essence, the stockholder has consented, by incorporation of the statutory provisions (General Corporation Law, § 27) into his contract of investment, to the management of the business by the board of directors, and this consent implies agreement that the directors in their business judgment shall determine whether corporate profits are to be distributed as dividends or retained to meet the needs of the business. But such consent does not extend to the point of absurdity; it does not give carte blanche to the directors. Broad as the business judgment rule may be, with corresponding difficulties in the way of proof of abuse, every stockholder has a right, a personal right, to have the directors exercise their discretion in good faith. If the denial of the dividend is not governed by managerial considerations, there is a breach of the contract of investment *between stockholder and corporation.*

In the present case, if the certificate of incorporation declared that dividends were to be paid on common stock when the corporation's financial situation and other conditions warrant, it would be indisputable that the stockholders had the right to, and the corporation the corresponding duty of, dividend distribution. (See, e.g., *Boardman* v. *Lake Shore & Michigan Southern Ry. Co.,* 84 N. Y. 157.) And the corporation's *duty* does not become its *right* merely through the omission of express language in the certificate, for the law reads in the words as clearly as if they were spelled out. The right is the stockholders', whether the promise to pay the dividends is expressed or implied.

In a case such as the present, with but one class of stock outstanding, it is easy to slip into the fallacy of regarding the common and homogeneous right of the stockholders as the right of the corporation. To expose the fallacy, however, one need but consider the case in which more than one class of stock has been issued, and the shareholders have disparate and conflicting attitudes toward dividend distribution. Assume, for example, that the corporation's capital structure consists of a class of

common stock carrying voting rights and effective control and a class of preferred stock entitling its holders to noncumulative dividends. The time may come when the directors, motivated by the interests of the common stockholders, decide not to pay dividends on the preferred stock. Quite obviously, the discretion of directors to declare or to omit the dividend in such an instance is of far greater moment to the preferred stockholders than in the case of common stock. The payment of a noncumulative dividend requires declaration by the directors and, if omitted, the right to it is lost. It would truly be a travesty of justice if the discretion of the directors to declare or to omit the dividend were not subject to judicial review. Such a review, however, would, of necessity, be directly concerned with the injury to the noncumulative preferred stockholders, and not to the corporation.

Since one class may urge and another resist a dividend distribution (see, e.g., *Koppel* v. *Middle States Petroleum Corp.*, 272 App. Div. 790, affg. 66 N. Y. S. 2d 496), the controversy does not lend itself to analysis in terms of any supposed unitary " right " of the corporation as such, and it is not meaningful to say, as the Appellate Division has in this case, that the corporation and its shareholders always have identical interests (280 App. Div. 655, 658).

Nor does the fact that a stockholder may sue at law for a dividend declared mean that he is enforcing the corporation's right rather than his own when he sues in equity to compel a payment. This is in essence no more than the ordinary distinction between an action for an accounting and one on an account stated. The right of a stockholder to a dividend payment is still personal to him and to his class; it is not the right of the corporation.

In an exceptional case, the failure to pay a dividend may wrong the corporation itself, a wrong which might be redressed through a derivative action. If, for example, such a failure results in the imposition of a penalty upon the corporation — under section 102 of the Internal Revenue Code — presumably, an action will lie against the directors in the right of the corporation. Such an action, however, would seek payment *to* the corporation, not *by* the corporation — precisely the distinction

between the true derivative stockholders' action and the case before us.[2]

No one disputes the right of a corporation to sue its directors for breach of their fiduciary duties. And there is ample authority to sustain the proposition that, in cases of waste or mismanagement or other breach of duty owing directly to the corporation, only the corporation — or a stockholder in an action instituted in the right of the corporation — may sue the directors. No separate personal action may be maintained by the individual shareholder, even though he may have suffered damage through the loss in value of his prorata interest in the corporation. (See *Niles* v. *New York Central & H. R. R. R. Co.*, 176 N. Y. 119.) The only damage to the shareholders flows from the loss of corporate assets; if the corporation succeeds in its action against the directors, the prorata loss sustained by the shareholders is made good. The assets so recovered, however — just as with other corporate assets — must be held by the corporation as a margin of safety for corporate creditors, and must not be distributed to the shareholders except under conditions which justify a dividend. Protection of the rights of creditors, then, militates against permitting individual actions by shareholders to recover their prorata share of the loss suffered by the corporation. But, quite obviously, these considerations do not apply to an action where the avowed purpose is to compel the payment of a dividend. In such a suit, there is no recovery flowing to the corporation and there is nothing lost by the creditors, since it is clear that no dividend could be compelled which would violate the law governing dividend declarations.

For the very reason that dividend distribution is not the corporation's right but its duty, the corporation may, in a dividend action, be sued as sole defendant. (See, e.g., *Shay* v. *Metropolitan Life Ins. Co.*, 172 Misc. 202, affd. 260 App. Div. 958; *Welch* v. *Atlantic Gulf & West Indies S. S. Lines*, 101

---

2. It is interesting to note that the same Appellate Division that decided the present case recently described a "derivative" suit as one which "seeks to benefit the corporation by restoring property to it or compensating it for losses suffered." (*Fontheim* v. *Walker*, 282 App. Div. 373, 375, affd. 306 N. Y. 926.)

F. Supp. 257, affd. 200 F. 2d 199.) Nothing can be more patent than that the lone defendant in an action is not the owner of the right upon which the suit is grounded. The circumstance that no other defendant than the corporation is necessary is explainable only by recognizing that the corporation is in reality the true adversary. It is just the opposite with a suit founded upon the corporation's right. In such a case, the corporation is merely a formal defendant against which no relief is demanded. Another party must be found to fill the role of adversary to the plaintiff; in actions based on the corporation's right the plaintiff stockholder, if qualified to bring suit, merely champions the cause of the immobilized corporation.

The court, however, in its opinion (pp. 464–465), suggests that the rationale for permitting a corporation to be sued as a sole defendant in a dividend action is to prevent delinquent directors from thwarting justice by absenting themselves from the court's jurisdiction. If that were so, if that reason were valid, it would, of course, hold equally in true stockholders' derivative actions, but we know that no court has ever sanctioned a suit for waste and mismanagement against the corporation alone.

When I say that there is no corporate " right " to compel payment of dividends, I do not mean to suggest that a corporation has no financial concern or business interest in that subject. On the contrary, a corporation, viewed as a legal personality, may have a very great concern in a balanced dividend policy. Once the law has breathed life into the artificial corporate being, it becomes an entity bent on self-perpetuation and growth. It takes nourishment from the investing public and its desire for continuance and growth makes it interested in remaining solvent and in maintaining a good financial reputation. However, the corporation's interest in a sound dividend policy must not be confused with the question before us. Section 61-b requires the posting of security in only those actions brought in the corporation's " right ", not in all those touching its " interest."

I do not mean to minimize the possibility that a corporation may be placed in jeopardy, by way of tax penalties or loss of access to the capital markets, through the failure of its directors to declare dividends. But I cannot too strongly emphasize that the possibility that the same act or failure to act may harm the corporation, is no justification for denying the stockholder's contractual right to dividends. In *Hammer* v. *Werner* (239 App. Div. 38, 44), the court went so far as to say: " The fact that a particular act of directors may constitute a wrong to the corporation which may be righted ordinarily on behalf of the corporation does not bar a stockholder from having redress if that act effects a separate and distinct wrong to him independently of the wrong to the corporation. Redress of this latter wrong is available to him personally despite the right of a present stockholder to redress the wrong in a derivative action so far as it relates to the corporation. (*Von Au* v. *Magenheimer,* 126 App. Div. 257; affd. 196 N. Y. 510; *Ritchie* v. *McMullen,* 79 Fed. 522; *Rothmiller* v. *Stein,* 143 N. Y. 581.) " In point of fact, the threat of harm to the corporation can be better averted without forcing recourse to the derivative action. The dangers of tax penalties for improper accumulation of surplus would disappear just as readily if the stockholders were allowed to proceed in their personal, contractual right to compel the payment of dividends. And the protection of the corporation's access to the capital market would probably be stronger if the minority shareholders have the power to compel the payment of dividends without encountering the roadblocks set up by section 61-b.

Furthermore, it seems to me self-evident that there should be a reasonable and consistent relation between the theory of the action and the relief sought. If we adhere scrupulously to the separate entity theory of corporate personality, it is both illogical and ironic to say that an action *must* be brought " in the right " of the corporation in order to deprive the corporation of part of its assets by the payment of a dividend. And we are no better off if we look at the underlying realities of the controversy. Most of the litigated cases arise in closely held corporations, when it is advantageous for the dominant

group of shareholders to withhold dividends, and the directors are subservient to the personal interest of this group. The reason may be simply a desire to avoid high-bracket individual taxes — which is the rationale of section 102 of the Internal Revenue Code — a consideration which may be of no weight whatever to the minority. Or there may be a more sinister purpose; the majority, entrenched in salary-paying positions in a profitable corporation, may wish to squeeze out the minority by a process of slow financial starvation. It is not persuasive in this setting to say that there is an identity of interest between the corporation, managed by majority rule, and the minority shareholders. The fundamental fact, and one that may not be blinked, is that the interest of the stockholder who sues to compel a payment of dividends is, to that extent, adverse to that of the corporation, whether the corporation is viewed as a separate person or as an instrument of the dominant group of stockholders. Thus, pragmatically as well as theoretically, a dividend action is not brought in the right of the corporation.

An action is in the right of a corporation, then, if the plaintiff asserts a right deriving from and through the corporation. Such an action "belongs primarily to the corporation, the real party in interest", and a resulting judgment or settlement "belongs to it and not the individual stockholder plaintiffs". (*Clarke* v. *Greenberg,* 296 N. Y. 146, 149; see, also, *Horwitz* v. *Balaban, supra,* 112 F. Supp. 99, 101; *Schreiber* v. *Butte Copper & Zinc Co.,* 98 F. Supp. 106, 112.) The reason is that a right of the corporation has been invaded. Since, however, a corporation has *no right to compel itself to pay a dividend,* the stockholders' right cannot possibly "derive" from it.

Several cases, as the court notes (opinion, pp. 468, 469), decided in this and other jurisdictions, have held that an action to compel the declaration of dividends may be brought in the right of the corporation (see, e.g., *Davidoff* v. *Seidenberg,* 275 App. Div. 784; *Lydia E. Pinkham Medicine Co.* v. *Gove,* 303 Mass. 1; *Laurel Springs Land Co.* v. *Fougeray,* 50 N. J. Eq. 756), but in no one of them did the court consider the question whether such an action might not be brought in the personal right of

the stockholder, if he chooses to frame his complaint on that theory and no other. (Cf. *Lydia E. Pinkham Medicine Co.* v. *Gove, supra,* 303 Mass. 1.) A far greater number of cases have sustained the action to compel the declaration of dividends on the theory that it is properly brought in the personal right of the stockholder (see, e.g., *Kranich* v. *Bach,* 209 App. Div. 52; *Pulsch* v. *Nyack Express Co.,* 253 App. Div. 734; *Dodge* v. *Ford Motor Co.,* 204 Mich. 459; *Stevens* v. *United States Steel Corp.,* 68 N. J. Eq. 373, 375–376; *Raynolds* v. *Diamond Mills Paper Co.,* 69 N. J. Eq. 299; *Fougeray* v. *Cord,* 50 N. J. Eq. 185; *Crichton* v. *Webb Press Co.,* 113 La. 167; *Giesecke* v. *Denver Tramway Corp.,* 81 F. Supp. 957); and writers of text and treatise have taken the same view. (See, e.g., Ballantine on Corporations [Rev. ed., 1946], § 234, p. 556; 3 Moore on Federal Practice [2d ed., 1948], pp. 3508–3509; de Capriles and Prunty, *1953 Survey of New York Law, Corporations,* 28 N. Y. U. L. Rev. 1429–1431 and 1953 Survey of American Law, 29 N. Y. U. L. Rev. 556–557; Note, 53 Col. L. Rev. 437; Note, 38 Corn. L. Q. 244; Note, 22 Fordham L. Rev. 97.) Typical is what the New Jersey court wrote in *Stevens* v. *United States Steel Corp.* (*supra,* 68 N. J. Eq. 373, 376): " The corporation is not injured by the retention of profits among its assets, which might be distributed and thus become the private, separate property of the stockholders. On the contrary, the corporation is enriched. The object of this suit is not to compel directors to do or refrain from doing something for the benefit of the corporation, but to do something for the benefit of the complaining stockholder which may be disadvantageous to the corporation." And Professor Ballantine, after observing that it is an " erroneous theory " to regard a stockholder's suit to enforce payment of a dividend as " derivative " in character, goes on to declare (*op. cit.,* pp. 556–557): " The right of shareholders to distributions of profits is a direct claim upon the corporation, but it is a class and not merely an individual claim. The suit should accordingly be brought as a class or representative suit on behalf of all shareholders of the same class to order a dividend distribution by the corporation for the benefit of all, *not for*

*relief in favor of the corporation as in a derivative suit.''* (Emphasis supplied.)[3]

The majority intimates that, since suits of this character may be subject to abuse, they fall within the policy of section 61-b. While I do not share the court's apprehensions on this point, we are not here concerned with the power of the legislature to impose such a limitation on a suit to compel the payment of a dividend if it chooses to do so, but rather with whether it has done so in section 61-b. The statute as enacted does not look at the motives of the stockholder, but at the nature of the right which he asserts. If the stockholder does not proceed in the right of his corporation, as the term is generally understood in the substantive law, it is not the function of the court to extend the limitations of section 61-b to cover all cases in which there may or may not be a possibility of abuse.

Moreover, the legislative history of the section does not lend the slightest support for such an interpretation. The statute was aimed at a particular and well-perceived abuse — the so-called '' strike suit,'' brought on behalf of a corporation against its directors or officers by persons who, since their holdings are '' too small to indicate legitimate personal interest in the outcome and accordingly in the bringing of the action,'' realize the nuisance value of their suits and hope to be bought off by secret settlements. (Wood, Survey and Report Regarding Stockholders' Derivative Suits [1944], p. 21; see, also, Public Papers of Governor Dewey [1944], p. 255; *Cohen* v *Beneficial Loan Corp.*, 337 U. S. 541, 548–549; *Lapchak* v. *Baker*, 298 N. L. 89, 94–95; *Shielcrawt* v. *Moffett*, 294 N. Y. 180, 190.) Actions for waste or mismanagement were peculiarly vulnerable to that abuse. Since only the corporation would benefit directly from recovery, and creditors' rights might intervene, the stockholder's chance of gain would be secondhand at best. Beyond

3. The flat statement in Fletcher's work on Corporations ([Perm. ed., 1932] vol. 11, § 5326, p. 816) to the effect that the action is "generally" derivative is based on dicta in the early New Jersey case (*Laurel Springs Land Co.* v. *Fougeray, supra,* 50 N. J. Eq. 756). The fact is, however, that the New Jersey court, twelve years later, unqualifiedly declared that the action is an "individual" or class action and is not to be brought in the right of the corporation. (See *Stevens* v. *United States Steel Corp., supra,* 68 N. J. Eq. 373; *Raynolds* v. *Diamond Mills Paper Co., supra,* 69 N. J. Eq. 299.)

that, if his interest were fractional, his benefit would be as small as it would be remote. By inducing a secret settlement for his direct and selfish benefit, he might obtain sums wholly disproportionate to his stock interest. By the same token, faithless directors or officers, facing large personal liability and jeopardy, were tempted to enter into the secret bargain as a cheap way out.

However, since the directors are not threatened with personal liability, no such opportunities or temptations attend, or are characteristic of, a suit to compel the payment of dividends. That such actions were not the evil at which the legislation was aimed, was made clear by Governor Dewey when, in approving the legislation, he declared that it was aimed at " stockholder suit[s] *against corporation directors and officers.*" (Public Papers of Governor Dewey, *op. cit.*, p. 255; emphasis supplied.)

I would reverse the order of the Appellate Division and answer both certified questions in the negative.

DESMOND, J. (concurring for reversal). I concur for reversal, on the ground stated last in Judge FULD's able opinion. If we are to read the words of section 61-b " any action instituted or maintained in the right of any * * * corporation " in their most literal and sweeping sense, they could include at least some suits brought by stockholders to force payment of dividends. However, the ample history of section 61-b and of the strenuous debates that preceded and followed its enactment, demonstrates that the Legislature was concerned with, and legislating about, suits against directors for money damages for wrongs done by them to their corporations.

LEWIS, Ch. J., CONWAY and DYE, JJ., concur with VAN VOORHIS, J.; FULD, J., dissents in an opinion in which FROESSEL, J., concurs; DESMOND, J., dissents in a separate memorandum.

Order affirmed, etc.